## Kentucky Distilleries & Warehouse Company v. James, et al.

(Decided October 24, 1924.)

### Appeal from Jessamine Circuit Court.

Master and Servant—Compensation for Paralyzed Leg with Ascending Degeneration should be as for Permanent Partial Disability—"Loss of Leg."—Injury resulting in paralysis of leg with ascending degeneration, and paralysis of side and back, should not be compensated for, under specific schedule in Ky. Stats., section 4899, as "for the loss of a leg;" but award should be regulated under last paragraph as for permanent partial disability.

WILLIAM M. DUFFY and JOHN H. WELCH for appellant.

J. W. SWOPE and J. E. ROBINSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

The question for decision upon this appeal is, whether an injury resulting in the loss of a leg, even though the leg is not amputated, should be compensated for under the specific schedule set forth in section 4899, Kentucky Statutes (workmen's compensation); or, whether the award should be regulated as to amount under the last paragraph of that section of the statute, which reads:

"In all other cases of permanent partial disability, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employe, compensation shall be determined according to the per cent of disability, taking

into account, among other things, any previous disability, the nature of the physical injury or disfigurement, the occupation of the injured employe, and age at time of the injury.''

The company admits liability, and further, that section 4899 governs the amount of its liability, but it says that the literary paragraph in the section, reading, ''for the loss of a leg, sixty-five per cent (65%) of the average weekly wage during 200 weeks,'' controls, and that the last literary paragraph of that section has no application to the facts of this case.

Appellee James, a farmer, was employed by the warehouse company as night watchman and was on duty at the time the accident happened, which resulted in his injury. Observing that a window to the warehouse appeared to have been tampered with appellee placed a ladder against the wall and climbed up to see about it. He was in the line of his duty. As he came down the ladder his coat hung, upsetting his pocket from which a pistol fell on to the floor or ground, causing it to be discharged, the bullet striking him in the thigh just above the knee, shattering the bone and causing him a very painful and disqualifying injury. He was sent to the hospital, where he remained for many weeks. When his wound healed it was found that his leg was not only stiff but that it was paralyzed and that he had no use of it. Several of the vertebrae immediately above the pelvis were affected by the injury and his back and side were in part paralyzed. The medical men who testified concerning his injury stated that the paralysis caused by the bullet wound had ascended to his hip, and in fact to the end of the sciatic nerve, apparently to its origin. It is stated that the condition of the nerve above the injury resulted from what is known in the scientific world as ''ascending degeneration.'' The board of compensation, after hearing the facts, delivered a finding and award, in part, as follows:

''The board, from the consideration of the testimony, and all the facts and circumstances in the record of this case, is of opinion, and so holds, that plaintiff's injury arose out of and in the course of his employment, and that notice of said injury was given to defendant, as is required by the compensation act. The plaintiff, at the hearing of this case, on August 2nd, 1922, testified that he was unable to perform any

labor or go about without the aid of crutches, hence we find and hold that the plaintiff was totally disabled from the date of his injury until August 2, 1922. The medical testimony in the case fixes plaintiff's permanent partial disability at 75%. In accordance with above, the board finds and holds that plaintiff was totally disabled from January 7th, 1921, until August 2nd, 1922, and is entitled to compensation covering said period of total disability at the rate of $15.00 per week, after deducting the usual waiting period of one week, and that thereafter he has a condition of permanent partial disability equal to 75%, and is entitled to compensation for same at the rate of $9.00 per week for the number of weeks remaining after deducting the total disability from the maximum period under the act, to-wit, 335.''

In making this ruling of law the board of compensation held that where permanent partial disability follows a period of temporary total disability, compensation will be paid for permanent partial disability for a period of 335 weeks, less the number of weeks for which compensation was paid for temporary total disability.

It is the insistence of appellant warehouse company that the order, decision or award is not in conformity to the provisions of the act, and that the findings of fact do not support the order, decision or award, and it relies upon the case of Nelson v. Kentucky River Stone and Sand Company, reported in 182 Ky. 317, and again in 183 Ky. 583. That case was twice before this court. Nelson had lost not only the sight of an eye but the eye itself. We held that the compensation provided for specific injuries is confined to the injuries named, but that for an injury resulting in the loss of an eyeball itself, the general provisions of section 4898, Kentucky Statutes, apply, and not the specific provision making compensation ''for the loss of the sight of an eye,'' alone. In the second opinion of the case it was said that it was not intended to lay down the rule that the workmen's compensation board could not use the schedule contained in the section to which we have referred as a standard by which to measure the compensation to be allowed for injuries specified. On the contrary, it could and should use the schedule in all cases except those falling within the general clause awarding compensation ''in all other cases of permanent partial disability, etc.''

The loss of the sight of an eye is in the same literary paragraph with the loss of a leg. In the Nelson case we distinguished between the loss of the sight of an eye and the loss of the eye itself, the latter being the greater because it not only takes away the vision but it disfigures the person.

In this case it is argued that the provision reading "for the loss of a leg," means the taking away of the leg, or any total incapacitation of that member, and that it does not make any difference whether the leg is amputated or is only rendered useless, as in this case. We think there is a distinction to be drawn, but for the purpose of this case we do not deem it necessary to pass upon that question and it is therefore reserved.

As stated above, the evidence shows not only that the leg is rendered absolutely useless but that it is an encumbrance, a hindrance—a dead weight. Furthermore, the evidence proves that appellant James is suffering from paralysis of the side and back, resulting directly from the accident and injury. Manifestly his injury is something more than the loss of a leg. Compensation under the schedule fixed in section 4899 for the loss of a leg would not cover his case. It would be inadequate. Realizing this, the board of compensation as well as the court below, when the case was appealed to it, concluded that compensation within the meaning, spirit and purpose of the workmen's compensation law could only be awarded appellant James under the general provision of section 4899, Kentucky Statutes, which applies to all other cases of permanent partial disability than those specifically set out in the Act.

The finding of the board was affirmed by the trial court, and we concur in that holding.

Judgment affirmed.