# Consolidation Coal Company v. Crislip, et al.

(Decided December 17, 1926.)

## Appeal from Johnson Circuit Court.

1. Master and Servant—Workman's Refusal to Submit to Serious Operation to Remove Stiffness Held Not to Relieve Employer from Further Liability (Ky. Stats., Section 4886).—Where coal loader, sustaining injury to left hip resulting in shortening of left leg and stiffness of joint, refused to submit to serious operation to remove stiffness, such refusal would not, under Ky. Stats., section 4886, relieve employer from paying further compensation.

2. Master and Servant—Premature Use of Injured Limb Held Not to Relieve Employer from Further Liability (Ky. Stats., Section 4886).—Early use of injured hip by coal loader after premature departure from hospital, though unwise since it resulted in shortening of leg and stiffening of joint, held not to relieve employer from further liability for compensation, under Ky. Stats., section 4886; physician in charge of case having said that it was all right to so use hip.

3. Evidence—Common Talk as to Workman's Premature Departure from Hospital Held Not Evidence (Workmen's Compensation Act).—Common talk around hospital that some one had given injured coal loader pair of crutches, that he had slipped away from hospital and walked home, held not evidence in action under Workmen's Compensation Act (Ky. Stats., sections 4880, 4987) for injuries to left hip.

4. Master and Servant—Payment of Maximum Allowance for Loss of Leg Held Not to Relieve Employer from Further Liability for Disability from Injury to Hip (Ky. Stats., Section 4897).—That employer had paid coal loader, as compensation for injury sustained to left hip, sum larger than amount provided as maximum allowance for loss of leg, held not to release employer from further liability, in view of compensation limits provided in Ky. Stats., section 4897.

5. Master and Servant—Finding of Fact by Compensation Board on Evidence is Not Reviewable (Ky. Stats., Section 4897).—On appeal, award of compensation board, made under Ky. Stats., section 4897, to coal loader, sustaining injury to left hip, would not be reviewed; weight of evidence and finding of board being that employee was totally disabled.

6. Master and Servant—Disqualification from Performing Usual Tasks of Workman Held "Total Disability."—"Total disability" for work held to mean that employee is disqualified from performing usual tasks of workman in such a way as to enable him to procure and retain employment.

7.    Master and Servant—"Total Disability" for Work Means "Totally
      Incapacitated."—"Total disability" for work held to mean the
      same thing as the phrase "totally incapacitated."

     J. WOODFORD HOWARD, O'REAR, FOWLER & WALLACE and
WHEELER & WHEELER for appellant.

     W. H. VAUGHN & SONS for appellees.


     OPINION OF. THE COURT BY DRURY, COMMISSIONER—
Affirming.

     The appellant, whom we shall call. the defendant,
asked the circuit court to review the action of the Work-
men's Compensation Board refusing to set aside an
award it had made to Fred Crislip, whom we shall refer
to by name. Crislip, during the course of his employ-
ment as a coal loader for the defendant, on May 4, 1921,
sustained an injury to his left hip. The Workmen's Com-
pensation Board, under statute, section 4897, awarded
Crislip compensation at the rate of $15.00 per week dur-
ing total disability, not to exceed the sum of $6,000.00.
On February 17, 1924, the defendant moved the board to
reopen the case. The board did so, and after receiving
considerable evidence, made the following order:

          "The defendant's evidence shows that Crislip
     has attempted to do some light work, but even in this
     he has been unsuccessful. The defendant lays much
     stress on the fact that the plaintiff is not totally dis-
     abled because he could use his hands with which to
     drive a wagon, although not a single witness is in-
     troduced to show that Crislip at any time loaded or
     unloaded the wagon or has done any manual labor.
     The defendant says that Crislip carried a couple of
     bushels of potatoes to his wagon, and that is the
     nearest that he has approached to performing man-
     ual labor.
          The board is of the opinion that Crislip may im-
     prove but he is at the time of the hearing wholly dis-
     abled from performing manual labor, and the evi-
     dence shows that no one has employed him or offered
     him employment. He has hobbled around his store
     and driven his own wagon, but nearly always with a
     man present on the wagon to aid him. Plaintiff's
     doctors testify positively that Crislip is wholly un-
     able to perform manual labor.

"In view of the serious injury that plaintiff received and the strong and emphatic evidence of his doctors, we can reach no other conclusion than that he is at this time wholly disabled, and we see no reason why the award should be disturbed.

";The motion to set aside, modify or reduce the compensation paid herein is overruled and the defendant is directed to continue payments until further ordered by this board."

The circuit court affirmed the action of the board. The defendant has appealed and is contending that this action is erroneous for three reasons. The first reason is based upon this part of section 4886, Kentucky Statutes:

"No compensation shall be payable for the death or disability of an employee if his death is caused, or if and in so far as his disability may be aggravated, caused or continued, by an unreasonable refusal, failure or neglect to submit to or follow any competent surgical treatment or medical aid or advice."

Crislip, after he was injured, was taken to the Paintsville hospital, where he stayed for a period of 23 days. He testifies that at the end of that time Dr. Sparks, who had charge of his case, told him he could go home if he had crutches; that some of the nurses or doctors at the hospital sent to Prestonsburg and secured some crutches there, which were sawed off and adjusted for his use; that some one at the hospital called a taxi and he left the hospital; made a trip to Van Lear and then returned to a house near the hospital. While he was at the hospital the doctors, so he testifies, told him that he had no fracture of the hip, but had merely sustained an injury to the muscles and ligaments, and that use would probably help him. It is claimed now by doctors who have examined a skiagraph of his hip taken then, that his hip was broken and that if he had remained in the hospital and had not used his hip, he would have made a complete and perfect recovery. As it is, his leg has shortened an inch and a half, or more, and his hip joint is stiff. It is now suggested that by an operation it may be possible to relieve the stiffness of this joint. The evidence is that this is a very serious operation, and that if this stiffness is due to some intracapsular trouble, it will

be impossible to relieve that condition, but if the stiffness is due to some extracapsular trouble, the operation may probably relieve the stiffness. He has declined to submit to such an operation and the defendant is contending that by the provisions of the statute quoted, *supra,* it should be relieved from paying further compensation. This same question was presented and discussed in an elaborate opinion delivered by this court in the case of Wallins Creek Collieries Co. v. Hicks, 216 Ky. 262, 287 S. W. 713. The reasoning in that opinion applies here and furnishes a complete answer to the suggestion that Crislip should now submit to an operation. It is further suggested that Crislip's condition is the result of his failure to remain in the hospital; but it can not be said that this was an unreasonable refusal, failure or neglect to submit to or follow competent surgical treatment or medical aid or advice, as he says he was advised to leave the hospital and to use his leg, and no one denies that. There is evidence, however, that this was a very unwise thing to do, but wise or otherwise, it was what he was told by the physician or surgeon who had his case in charge, and the defendant can not now be relieved because in the light of subsequent developments it has been found that his hip was broken and that by the use of it before the fracture had healed, the shortening and other bad results were produced. In the case of Pacific Coast Cas. Co. v. Pillsburg, 171 Calif. 319, 153 P. 24, McKay, the injured employee had broken his arm while cranking an automobile. The injury received proper medical and surgical treatment, the bones knit well, and he was on a fair way to recovery when he made a trip of several days to Kurnville, during which the broken bone slipped and shifted in such a way that it became necessary to break it apart and reset it. The question before the California court was that of the allowance of compensation for this second surgical work. The California court said:

"An additional injury to McKay caused by carelessly using his arm too soon is as much a new injury, not within the terms of the Constitution or statutes as if it had occurred by accident. The commission upon the facts shown was therefore without power to award compensation for the additional disability or for the expense caused by the slipping of the broken parts of the bone."

In that case, many authorities are cited in support of that holding. It will be observed that the California court speaks of McKay carelessly using his arm too soon. Therefore, what was said in that case is not applicable here, for while Crislip may have unfortunately used his leg too soon, it can not be said that he carelessly did so, for he used his leg upon the advice of and in the manner directed by the physician and surgeon in charge of his case and of the hospital where he was being treated. His experience shows plainly that the use of his leg then was a mistake. He knows now that was not the proper thing to do, but there is nothing to show that he knew so then. No one disputes that, except Dr. Archer, who in his deposition says, "It was common talk around the hospital that somebody gave Crislip a pair of crutches and he slipped off from the hospital and walked home." Common talk is not evidence in a case like this. This disposes of the first contention.

The defendant's next contention is that it has already paid to Crislip $2,423.56, that Crislip still has his leg, whereas the maximum allowance for the loss of a leg is $2,400.00, and that the defendant has already paid for the injury to this leg, more than it would have had to have paid if the leg had been amputated. That is true, but in the case of Ky. Distilleries & Warehouse Co. v. James, et al., 205 Ky. 185, 265 S. W. 629, we had a similar case with a similar contention, and it was decided adversely to the contention of defendant. This award was made Crislip not for the loss of a leg, but for loss of his ability to work. This brings us to the defendant's 'final contention, which is based upon section 4897, Kentucky Statutes, which provides: "When the injury causes total disability for work the employer during such disability, etc., shall pay, etc.," and that involves a construction of the expression "total disability for work." Dr. Atkisson says, "Crislip is unable to perform manual labor." Dr. Bailey says, "Crislip is totally disabled to work at common labor or hard labor, by reason of his injury." Dr. G. V. Daniel says, "Crislip's condition renders him totally unable to do manual labor such as he was doing when he was hurt." Dr. G. V. Daniel examined Crislip again about six months after making the above statement and after such examination said, "Crislip is totally and permanently unable to perform manual labor to amount to anything." Dr. D. H. Daniel says, "If his leg is al-

lowed to remain as it is, I do not think Crislip will ever recover sufficiently for him to be able to do manual labor that requires standing on his feet." Dr. Archer said, "There might possibly be some labor he could not do, but any labor that would not require him to do quick flexion to the abdomen, I believe he could. I think 75% to the leg a liberal disability." Dr. Holbrook said, "Taking farm work and the work with which I am familiar, I think Crislip could do half a man's work." Dr. Stevenson said, "I would estimate Crislip's disability to the body as a whole at about 75%." There is in this record the testimony of a number of laymen. They testify about Crislip's condition, and their opinion seems to be about like the opinions of the doctors. Some think he is totally disabled, others think he is only partially disabled. The weight of the evidence, and the finding of the board is that he is totally disabled. None of these witnesses says that Carslip is unable to perform every kind of work, and the defendant relies on these cases wherein we have said that a finding of fact by the Workmen's Compensation Board on undisputed facts is a finding of law which is reviewable by the courts. Rusch v. Louisville Water Co., 193 Ky. 698, 237 S. W. 389; Bates & Rogers Const. Co. v. Allen, 183 Ky. 815, 210 S. W. 467; Jellico Coal Mining Co. v. Chatfield, 200 Ky. 842, 255 S. W. 842. Defendant contends there was no evidence that Crislip was totally disabled and therefore nothing on which the Workmen's Compensation Board could base its finding, hence the courts may and should review it.

The record shows that Crislip has a small country store, with a stock of groceries and dry goods, worth probably three or four hundred dollars, which is operated by his wife, though Crislip occasionally waits on the trade and goes about in the store by means of a crutch or cane, or by holding to the counter or shelving. It is shown that he can drive a wagon, but he is unable to either load or unload the wagon. It is shown that he has rented some land and has superintended and directed its tillage, but it is not shown that he is able to do any work on the land, though there is some proof that he hoed some corn. It is shown that he is able to ride horseback and that he is a minister, and it is suggested that probably he might earn something in that capacity. There is no showing, however, that by any of these activities he has ever profited one dime. He is a man about 25 or 26 years

of age, and seems to have considerable energy. Therefore, we return to the consideration of what the legislature means by the expression, "total disability for work." In the case of Jellico Coal Mining Co. v. Chatfield, 200 Ky. 842, 255 S. W. 842, we had before us this question, but we found it unnecessary to define this phrase in that opinion because it was shown that the injured man was 59 years of age, had a limited education, and was untrained in any occupation save that of a coal miner; that his physical condition was such that it would prove a serious handicap in procuring other suitable employment,and that he was too far advanced in life to obtain an education or to undergo training for a new occupation. We did not define this phrase in that case.

In the case of Hartford Accident & Indemnity Co. v. Davis, 184 Ky. 487, 210 S. W. 950, we defined this phrase: "Totally disabled and prevented from performing any and every kind of duty pertaining to his occupation." The phrase there defined is not the same as the one before us, nor have we found a definition of the identical phrase that is before us, but we have found a definition of a phrase which means the same thing. In the case of Moore v. Peet Bros. Mfg. Co., 99 Kan. 443, 162 P. 295, that court had before it for definition the expression, "total incapacity for work," and that court said:

"One who is disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated."

In that case, it was shown that the injured workman was conducting a cleaning, pressing and tailoring business, out of which he was making twelve or fifteen dollars a week, but it was not shown that any of the physical labor in connection therewith was done by him. Further in that opinion, the court said:

"If it had been shown in this instance that the plaintiff personally performed a part of the work of cleaning, pressing and tailoring, a very different question would be presented. Possibly any portion of his income that could be traceable to such work on his part should be given the same effect as though he received it as wages. But the showing made is merely that he is 'making' a certain sum weekly out of the business which he is 'conducting' as owner,

and this might be the case although he were a complete physical wreck. A judgment based on a finding that a workman's injury has resulted in his total disability to work can not be said to be inequitable or against conscience because he has the thrift and intelligence to provide for his support by investing such means as he has in a business carried on by the labor of others under his direction.''

It seems to us that decision is sound, and it is conclusive of the question we have, and that the definition of that phrase, given by that court is the correct definition of the phrase before us. The two phrases mean the same thing. The Kansas court based its definition upon a case from Scotland, Paterson v. Moore & Co., 47 Scot. L. Rep. 30, and upon an English opinion, Callico Printers' Assn. Ltd. v. Higham (1912), 1 K. B. 93, 102.

A similar question was before the state of Wisconsin in the case of McDonnel v. Industrial Com. of Wis., reported in 162 N. W. 345, 165 Wis. 372, and that court quoted with approval the opinion of the Kansas court, which we have quoted, and said:

''There is a substantial difference between a man's wage earning capacity, the foundation of the Workmen's Compensation Act, and his capacity to make money in a business conducted under his supervision or direction and with the use or investment of other capital than that which arises from his own labor. Success in such an undertaking is so evidently dependent upon manifold conditions other than the capacity to work that it cannot, as the law is now written, be considered to be a condition that must militate against his right to compensation for permanent total disability to carry on the work which he was employed in at the time of the accident or other suitable employment.''

The question was before the Supreme Court of Vermont in the case of Roller v. Warren, 129 A. 168, 98 Vt. 514. That court said:

''The term 'incapacity for work' appearing in practically all workingmen's compensation statutes, has come to have a well-settled meaning. It means loss of earning power as a workman in consequence of the injury, whether the loss manifests itself in

inability to perform such work as may be obtainable or inability to secure work to do."

In Texas, in the case of Home Life & Accident Co. v. Corsey, 216 S. W. 464, a workmen's compensation case, the Texas court adopted the definition given by the Kansas court.

The question was before the court of Tennessee in the case of American Zinc Co. v. Lusk, 255 S. W. 39, 148 Tenn. 220, and that court said:

"Whenever it appears that an employee has suffered such a degree of permanent loss of the sight of both eyes as totally incapacitates him from working at an income-yielding occupation which requires the use of eyesight, this constitutes such a loss of the sight as is contemplated by the statute. And, further, a condition resulting from injury which leaves the employee incapacitated to work in an income-yielding occupation constitutes total disability whenever his income-earning capacity is restricted to work which normally one can perform if totally blind; the loss being of the sight, or without arms, if the loss be of that nature. In other words, the employee's disability is none the less 'total' in the sense of the statute although it appears that without arms he can yet use for income-earning purposes his eyes and feet or mental equipment; or if without eyes, he can so utilize his retained physical and mental powers."

These cases announce the same general rule: In Re Lacione, 227 Mass. 269, 116 N. E. 485; In Re Sullivan, 218 Mass. 141, 105 N. E. 463, L. R. A. 1916A 378. Many valuable notes are collected in 33 A. L. R. 115.

As the circuit court in its ruling adopted the same views that we have, its judgment is affirmed. The whole court sitting.