## Melcroft Coal Company v. Hicks.

(Decided April 24, 1928.)

## Appeal from Harlan Circuit Court.

1. Master and Servant.—In proceedings under the Workmen's Compensation Act (Ky. Stats., secs. 4886-4987) by a father to recover for the death of his minor son, that duplicate copies of petition to circuit court for review of Workmen's Compensation Board's order refusing compensation were filed in clerk's office, and that employer received one of such duplicates, constituted a sufficient furnishing to employer of a copy of the petition.

2. Master and Servant.—Compensation Board's order denying compensation to father of deceased minor could be reviewed by the circuit court as a matter of law, where there was no material contradiction of facts.

3. Master and Servant.—Father, using part of his minor son's earnings in paying for father's automobile and in support of other members of father's family, held, within Workmen's Compensation Act (Ky. Stats., secs. 4880-4987), a "partial dependant" of the son.

4. Master and Servant.—In proceedings by father to recover for death of minor son, reviewing court will require return of cause to Workmen's Compensation Board for additional proof as to degree of dependency of father on son's earnings, where fact of partial dependency has been shown but extent thereof has not been made clear.

5. Master and Servant.—Under Workmen's Compensation Act (Ky. Stats., secs. 4880-4987) "necessary support," within dependency provisions, does not mean modicum, merely covering the bare necessities of life, but it means an income sufficient to afford one's family the character of living had and enjoyed by others in the same class and station in life.

6. Master and Servant.—In proceedings under the Workmen's Compensation Act (Ky. Stats., secs. 4880-4987) by father to recover for death of minor son, that son contributed to family funds used by the father in payment of lien notes on lots purchased by the father could not be considered on question of father being partial dependent of son.

SAMPSON & SAMPSON for appellants.

G. J. JARVIS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Fred Hicks, a miner, 17 years of age, was killed by falling slate in the mines of the Melcroft Coal Com-

pany on January 27, 1926. His father, J. W. Hicks, filed application before the Workmen's Compensation Board for compensation. It was admitted that Fred was an employee of the company and that he was killed as the result of an accidental injury arising out of and in the course of employment, and that during the 11½ months preceding his death that he earned $1,160, a large part of which was paid to his father and mother; the issues being as to whether the claimant was a partial dependent, and if so to what extent. At a hearing before a member of the board, compensation was refused, and this was affirmed on review by the full board, but reversed by the circuit court, which found that Fred's contribution for his support amounted to three-fourths of his earnings and that claimant was entitled to an award of $9 per week for 335 weeks and directed such an award to be entered. The company appeals.

At the outset we are confronted with a preliminary question; it being claimed that appellant was not furnished with a copy of the petition for review filed in the circuit court. We do not think this point is well taken. Duplicate copies of the petition were filed in the clerk's office and one of them received by the appellant, defendant therein. We deem this sufficient.

The proof shows that J. W. Hicks was an experienced miner; his family consisted of his wife, their five children including Fred, and his wife's brother Jess Blair, the housework being performed by the mother. Fred was not assigned a room in the mine, but both he and Jess Blair loaded coal in rooms which had been shot by J. W. Hicks. In this work Fred was apt and loaded five cars of 2½ tons per day. For this the company paid 40 cents a ton, or $1 per car. The boys worked under J. W. Hicks, and by an arrangement with the company each of them was credited with two cars per day; the other three cars being credited to J. W. Hicks. It appears, however, that Fred was much the best loader and earned considerably more than Jess. Of the amount thus credited to Fred during the period mentioned, it appears that the company charged him with certain fixed amounts required of all employees for medical attention, smithing, car checks, etc., and that his mother drew the remainder of his wages in script. She testifies that she expended his money in his behalf and used the remainder

for family purposes; that the groceries for the entire family were around $100 per month, and that Fred paid $5 per month on a bicycle; fixed charges of the mine were $——, his clothing about $12 per month, and that he used $10 per month for picture shows, ice cream, etc., and that the remainder of the $454 earned by him during the time mentioned (about $113) was retained by her for the support of the family. His father's evidence does not materially vary from these details. The father further testifies that at the time Fred went to work he was in ill health and under a financial strain, and that Fred was assisting him in bearing the family burden; that out of the funds received by him from Fred's work he paid $180 on an automobile, paid some lien debts he owed on certain lots, and used the balance in the support of the family. The books of the company show that during the year the father received $3,200 from the company, but it will be observed that this included the coal loaded by Fred and Jess which was credited to his account, bringing his actual earnings under $2,000. The company's evidence does not vary materially from these facts, it being shown that the cost of board for a single man was $37.50 per month to $40 per month, but that the living cost of families such as that of Hicks was about $16 for each member per month; hence it cannot be said that there was a material contradiction of fact, and the award of the board is not conclusive but may be reviewed as a matter of law.

In the recent case of Clover Fork Coal Co. v. Ayres, 219 Ky. 326, 292 S. W. 803, it is said:

"Parents are not in the class of persons who are conclusively presumed to be dependent upon a deceased employee, under our statute, but whether or not they are dependent in whole or in part must be determined in accordance with the facts of each case existing at the time of the accident. In order to entitle them to the benefit of the statute, it is not necessary that their dependency be total, nor that they have no other means of support. Parents earning wages may be partially dependent upon the earnings of their child within the meaning of the act, . . . and the cases quite uniformly hold that mere ability of the claimant to earn a livelihood does not show there was no dependency, and partial depend-

ency may exist, even though the evidence shows the claimant could have been sustained without the contribution of the deceased employee. The test of dependency is, were the contributions used for the support of the family, and were they necessary, the claimant's station in life being considered, and were the claimant's earnings sufficient to susutain himself and family in a manner befitting his class and position in life without such contributions? Of course, if such contributions are more than offset by the support rendered by the parents, then there is no dependency''—quoting with approval from 28 R. C. L. 779, in which it is said: ". . . And it is not essential to show exactly what proportion of the parent's living expenses was contributed by the child. Inasmuch as dependency is not based upon absolute necessity, a father may be found to be dependent upon the earnings of a son who had given his wages to the father, although the latter might also be earning wages which could have supported him and his family. But a parent cannot be said to be dependent where it appears that he is enabled to save money out of his child's wages, after having paid all of the latter's expenses.''

Among other authorities there quoted with approval is Conners v. Public Service Electric Co., 89 N. J. Law, 99, 97 A. 792, wherein it was held that—

"It is a legitimate inference that the family was deriving substantial benefit of the deceased's son where he voluntarily gave all of his wages into the common fund, and the amount so contributed was more than his board and lodging, and it is immaterial that the parents also worked and contributed their earnings to the family fund.''

In the light of the above authorities, it is evident, under the facts of this case, that the claimant was a partial dependent of his deceased son; but the facts were not sufficiently developed to ascertain the degree of dependency. There is no intimation that the father actually charged the son for board; nor of any contract by which the father was to make a profit on the son's labor, though it clearly appears that Fred contributed practically all of his earnings to the family funds, and the case turns

upon how much of this was reasonably necessary for the family support. As we have seen, necessary support does not mean a modicum, merely covering the bare necessities of life, but it means an income sufficient to afford the family the character of living had and enjoyed by others in the same class and station in life. It is shown that automobiles are in common use and a convenience, if not a necessity, among people in claimant's station and class in life. And no good reason can be perceived why the son might not voluntarily contribute part of his wages to assist in paying for such machine and its upkeep, and do the same as to other similar articles in use by the family. Certainly the substantial sums paid for the family support out of his earnings by his mother independent of his upkeep were to be regarded as necessities. On the other hand, the payment of lien notes on lots claimant had purchased and which constituted a permanent investment, and like matters in which the father would earn a profit out of the son's earnings, cannot be considered. As these matters cannot be determined by the present state of the record, the case should be returned to the board with permission to the parties to introduce additional proof on the points suggested.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.