## Fordson Coal Co. v. Palko et al.

March 1, 1940.

R. Monroe Fields, Judge.

Harman, Francis & Hobson for appellant.

G. R. Blackburn for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

This is an appeal from a judgment of the Pike circuit court, wherein upon review it reversed a finding of the Workmen's Compensation Board, reducing a former award for total disability.

On May 7, 1934, Palko, 36 years old, was engaged in appellant's mines as a coal loader. There is no dispute as to both parties having accepted the terms of our compensation law, nor as to Palko's having been injured while in the course of employment.

Palko originally was awarded a sum of $15 per week for a fixed period; up to about June 21, 1937, he had received over $2,100 by way of compensation. At about the date named, the company made a bona fide offer to bear the expense of an operation. The accident resulted in multiple fractures in the region of the pelvis. There had been a healing, but it was such that his right hip joint was higher than the left, leaving an unnatural balance. After the healing there followed what is commonly called "traumatic arthritis," which caused continuous severe pain, particularly in any movement which involved the injured joint, so as to prevent him from doing manual labor.

On August 16, 1937, the employe filed with the Board application for readjustment of the claim or award, due to a disagreement as to the future amount and duration of the compensation payable. This arose from the fact that the employer had made the offer of an operation, which in the opinion of physicians would result in relief, and permit Palko to follow his usual occupation, under certain circumstances and conditions, which offer was refused.

On June 21, 1938, after considerable proof had been taken, the Board rendered an opinion which stated the facts we have in substance detailed, and found that the employer had offered in good faith an arthrodesis operation, which would relieve further suffering from pain; the effect of the operation being to render the hip joint rigid, thereby preventing movement, which, as claimed, caused the severe pain.

The Board heard the testimony of four doctors for employe, and four for employer, and their differences of opinion is the chief matter of controversy. The testimony of the doctors who appeared for the employer and approved the operation, was clearly that the operation would reduce the existing disability by between twenty to fifty per cent.

Those who testified for Palko doubted the efficacy of the proposed operation, and under their advice Palko declined to submit. The Board accepted the testimony of the doctors for employer, and concluded that the testimony on behalf of Palko did not contradict the evidence for employer. The Board held that under Section 4886, Kentucky Statutes, as construed in Consolidation Coal Co. v. Crislip, 217 Ky. 371, 289 S. W. 270; Olson v. Triplett, 255 Ky. 724, 75 S. W. (2d) 366; Aetna Ins. Co. v. Gullett, 262 Ky. 1, 89 S. W. (2d) 1, it had before it a question of fact. It classified employer's evidence as being specific, while that offered by Palko was said to be general in its nature.

The statute under which the hearing was had, and referred to supra, reads in part:

"No compensation shall be payable for the death or disability of an employee if his death is caused, or if and in so far as his disability may be aggravated, caused or continued, by an unreasonable refusal,

failure or neglect to submit to or follow any competent surgical treatment or medical aid or advice.''

On the merits the Board found as matters of fact, that:

"Plaintiff's refusal to submit to the operation as tendered by defendant, is unreasonable and maximum improvement in plaintiff's condition could be expected within six months after the operation.

"The plaintiff's present total disability is due to his refusal to submit to the operation, and to his injury in the following proportions: to the injury 66 2/3 and for refusal and failure to submit to the operation 33 1/3.''

They readjusted the former award as follows:

"The employer should pay to Palko the sum of $8.00 per week from the date of application, August 13, 1937, for a period of not exceeding 172 weeks, this being the difference between the maximum of 335 weeks and 153 weeks, the time which expired from the date of injury to the time of filing application, the total not to exceed $4,000 with interest on all due and unpaid installments and doctor's bills not to exceed $100.''

"There being some possibility that the plaintiff may at some future time elect to avail himself of the tendered operation, this case is retained on the docket for further orders, if and when such necessity arises.''

As said and shown, the Board's opinion was rendered on June 21, 1938. On July following, Palko filed in the Pike circuit court his petition for review, in which he set out the facts substantially as detailed above, (minus the Board's comments) and alleged that by reason of the Board's conclusions "it became necessary for him to file with the Board his application for adjustment of compensation due to his injury." He alleged that the Board's finding was wrongful and illegal, and an abuse of discretion vested in the Board.

To his petition the employer filed response in which it denied the allegations of Palko's petition, and in a second paragraph it contended that the petition for review was filed in the clerk's office on July 7, 1938. The

finding of the Board was on June 21, 1938. The summons was issued on July 7, 1938, the day of filing. The return of the sheriff shows service on appellant on August 15, 1938, admittedly twenty days after the filing of Palko's petition, hence the court was without jurisdiction. Issues were completed by a reply to the affirmative plea.

The court first held that the appeal to the court was perfected "in time by the filing of the petition for review on the 7th day of July 1938, and the issuing of the summons by the clerk at that time, and the placing of same in the 'sheriff's box' for service by him." On the chief question the court disagreed with the Board, saying in substance that after reviewing the proof, the conclusion was that Palko's refusal to submit to the proposed operation was not unreasonable, and no part of his total disability was due to such refusal. The court ordered his judgment certified to the Board, and in effect set aside the Board's order, and directed restoration of status.

Dr. Scott of Huntington, West Virginia, a recognized orthopedic specialist, had made three examinations of Palko, one shortly after the accident; the last made shortly before his testimony and one after, or at the time the employer offered the operation at its expense. The doctor after testifying as to the existing conditions at the time of the examinations, and as to the presence of the condition which caused pains, said:

"The operation would consist of placing a bone graft between the neck of the femur and the pelvis. In the presence of the marked amount of new bone formation since the last X-Ray, it would not be necessary to do the more radical bone scraping at the head to achieve a fixation of the hip. Such procedure would be done without great shock. It would necessitate the patient being in a cast for about three months. The result would be a painless hip in a position of about 35 degrees of flexation, and neutral as to rotation, abduction and adduction. He would be able to walk with only a slight limp and without pain."

The doctor threw further light on the effect of the operation from his viewpoint by adding:

"In comparing the present (1937) plate with the

one taken in 1935, it will be seen that there has been marked extension of the callous or new bone formation from the pelvic bone upward, and toward the greater trochanter, in nature's attempt to heal and mobilize this hip (joint) that is, to stabilize. I interpret that to mean nature's attempt to do what we would do by surgery.''

Dr. Shelton, of Williamson, West Virginia, Dr. Flannary of Pikeville, and Dr. Johnson of Stone, all qualifying as being familiar with Palko's condition, and the probabilities of a result of the proposed operation, agree that there would result from the operation an improvement in his hip joint condition to an extent ranging from twenty-five to fifty per cent. All agree that he could load coal, or do other mine work under certain restrictions. Several of these doctors, if not all, had advised Palko to undergo the operation.

All the doctors, at least those who testified on the point, agreed that Palko's general health was good. He was a little overweight; had a slight but not abnormal hypertension; except for this his health was practically normal. One or two of Palko's physicians were of the opinion that he had reached a maximum degree of improvement, which may be taken to mean that in their opinion nature had gone to its limit in remedying the injury.

In commenting on the testimony of those who testified for applicant, it was pointed out that they gave no reasons whatever as a basis for their advice or suggestion to Palko why he should not undergo the proposed operation. One of the doctors, Dr. Bracey, was a specialist in the treatment of traumatic injuries. He had made an examination of Palko with Dr. Camper. Dr. Bracey ventured the assertion that after his examination with Dr. Camper, he would not advise an operation at this time, but offered no tangible reason in support of his conclusion. The testimony of the other doctors was to the same effect, none of them asserting that the operation would be attended by any sort of danger to applicant's life, or health, and only one doubting favorable result. Dr. Boland was the only doctor testifying for appellant who undertook to describe an operation, and as we read the proof we conclude, as did the Board, that this doctor had in mind an entirely different one

from that advocated by Dr. Scott, and employer's other doctors.

The operation described by Dr. Boland was one advocated by Dr. Albee of New York, and consisted of cutting down of his hip joint and scraping away the unnatural bony growth, giving a smooth surface, so there would be mobility or flexibility, rather than rigidity, as in the method proposed by Dr. Scott.

In speaking of the "locking" of the joint, as proposed, the doctor said: "You never know of results until after you try it." He thought the object in operating in the present instance would not be so much to relieve him of pain as to give him motion, evidently speaking of the Albee treatment, since Dr. Scott and his conferees suggested a stiffening of the joint, which would, as they believed, relieve the severe pain.

So, the question presented to us is whether or not the court correctly overruled the finding of the Compensation Board, and concluded that Palko's refusal to submit was not unreasonable. The rule to be applied here is no different from the rule with regard to the Board's action in passing on other questions of fact, such as the question of extent of injury, liability, or whether the injury was received in the usual course of employment. That it is such a question of fact as will call for the application of the rule that if there be any proof to sustain the Board's finding, neither the circuit court nor this court should disturb the finding, is too well settled in this and other jurisdictions to be open to question. Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50; Wallins Creek Collieries Co. v. Hicks, 216 Ky. 262, 287 S. W. 713; Creech Coal Co. v. Smith, 234 Ky. 166, 27 S. W. (2d) 686. The general rule as evidenced by opinions of courts of other jurisdictions, is that the question here presented is one of fact. See Robinson v. Jackson, 116 N. J. L. 476, 184 A. 811, 105 A. L. R. 1466, and annotations.

Applicant's counsel argues very strenuously that in giving effect to the meaning of Section 4886, Kentucky Statutes, we have held it to be the general rule that the employee's conduct is held unreasonable when his own and his employer's doctors are unanimous as to the course of treatment, which he refuses to follow. This rule is taken from the Editor's note under the sec-

tion of the statute, supra, without particular reference to authority.

Without discussion, it may be admitted that this is, or ought to be, the general rule, but it does not militate against the rule that the Board may weigh such evidence as is produced, and conclude from the proof that the refusal is unreasonable. Particularly so when adverse proof presents no reason why the proposed operation would be attended with danger to life or limb, or health, or why the operation would not have beneficial results.

In the case of Wallins Creek Collieries Co. v. Hicks, supra, we held that the refusal of the employee to submit to an operation by the insertion of wires or screws in a dislocated joint in order to hold the bones in place, was not unreasonable. But there, the doctor who proposed the operation, frankly doubted the success of the operation, and said that in performing it the fluid in the knee joint would be drained, and infection might set in and cause serious trouble. Employee's personal physician for three years or more, testified that he had "incipient tuberculosis, and the administration of the usual anesthetic would probably result in pneumonia," and would be highly dangerous.

In Consolidation Coal Co. v. Crislip, 217 Ky. 371, 289 S. W. 270, 271, it is shown that employe had suffered a broken hip, which resulted in the shortening of one leg to a considerable extent. Crislip declined to submit, and the Board held him justified. The proof is not given in detail, but this court found the testimony to manifest that "this is a very serious operation, and that, if this stiffness is due to some intracapsular trouble, it will be impossible to relieve that condition, but, if the stiffness is due to some extracapsular trouble, the operation may probably relieve the stiffness;" citing the Hicks' case, supra, we upheld the Board's finding.

The courts of other states are not in unanimity on the question presented here. This is in some cases due to the absence of a specific statute controlling the situation. However, the general rule laid down in Robinson v. Jackson, supra, seems to be the one followed where it has been applied. In that case the court in passing on a New Jersey statute, similar to ours, in effect wrote [116 N. J. L. 476, 184 A. 812, 105 A. L. R. 1466]:

"The right of the employer to impose medical or surgical treatment upon the injured employee is not, of course, an absolute one. Compulsion in such matters must needs be cautiously exercised. The employer's right in this regard is necessarily circumscribed by the correlative right of the employee to avoid, if he chooses, peril to life, however slight, and undue risks of health, and anguish that goes beyond the bounds of reason. The employee's refusal to submit to the tendered treatment, whether medical or operative, is not unreasonable, and therefore unjustifiable in the legal sense, unless it is free from danger to life and health and extraordinary suffering, and, according to the best medical or surgical opinion, offers a reasonable prospect of restoration or relief from the disability. And the question of the reasonableness of the refusal, tested by this standard, is one of fact. [quoting cases.]"

From a careful review of the testimony we are of the opinion that employer met the burden by sufficient proof that its proposal was reasonable, and that the employee failed to refute this proof to any degree. Our conclusion on the above chief question renders it unnecessary to discuss the procedural question above mentioned, and argued at length by both parties. Nor can we consider the contention that the Board's award should have been made under Section 4897, Kentucky Statutes, rather than Section 4899, since upon the record before us there was no such contention made before the Board or passed on by the circuit court. Not having been presented for the Board and the court's review, it cannot be raised here for the first time. Creech Coal Co. v. Smith, supra; McCombs Coal Co. v. Alford, 234 Ky. 42, 27 S. W. (2d) 430.

Judgment reversed.