# Kentucky-Jellico Coal Co. v. Lee.

Jan. 13, 1942.

H. H. Owens for appellant.

J. J. Tye for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

On the 4th day of January, 1938, appellee, Tom Lee, was loading coal in appellant's mine. While he was on his knees shoveling coal a piece of slate dislodged from the roof of the mine and fell on him resulting in severe injuries to the pubic bones. At the direction of appellant he was taken to a hospital in Middlesboro where X-ray pictures were taken by Dr. J. T. Evans. After remaining in the hospital approximately two weeks he was discharged and directed to return to his home and remain in bed; several weeks later he was taken by appellant to a hospital in Harlan where other X-ray pictures were taken; and in June, 1938, Dr. Stacey of Pineville took a third set of X-rays. He was advised by a specialist, Dr. Bagwell, of Knoxville, Tennessee, to wear a brace for the correction of his injuries. He wore the brace for several months and submitted to another examination by Dr. Bagwell, who informed him that the brace had failed to correct or repair his injuries and suggested that he submit to an operation in an endeavor to fuse the broken and displaced bones of the pelvis. He was informed that in the performance of the operation an incision would have to be made in the sacro-illiac joint and after the bones had been fused, it would be necessary for him to be placed in a cast and remain in the hospital about 90 days. The doctor told him he would not guarantee the results. Appellee then consulted Dr. Evans who took the first X-ray pictures and was advised by him that an operation would not improve his condition. The same advice was given him by Dr. J. T. Tye of Barbourville, a physician of his own selection. He thereupon refused to submit to the operation.

Application for adjustment of compensation was duly filed, wherein defendant denied liability because the plaintiff refused to submit to the operation described above and additionally contested the extent and duration of the disability. The case was heard by one of the referees and findings were made that appellee was permanently and totally disabled and that he had not unreasonably refused to follow competent medical and surgical advice. He was then awarded compensation in the sum of $13 per week for 416 weeks. On appeal to the circuit court the board's findings and award were affirmed

and judgment entered thereon from which judgment this appeal has been prosecuted.

It is insisted by appellant that there was no medical evidence contrary to that introduced by it to the effect that there was no danger in the operation and that if appellee would submit to the operation his disability would be entirely removed or greatly reduced, and, therefore, since appellee refused to submit to the operation, compensation should be denied under Section 4886, Kentucky Statutes, which so far as pertinent recites:

"* * * No compensation shall be payable for the death or disability of an employee if his death is caused, or if and in so far as his disability may be aggravated, caused or continued, by an unreasonable refusal, failure or neglect to submit to or follow any competent surgical treatment or medical aid or advice."

Appellant does not contend that appellee is not permanently and totally disabled in his present condition. Counsel are agreed that where there is no contrariety of evidence on the question, compensation will be denied if appellee is able but refuses to submit to an operation where the latter is not unusually hazardous and will practically eliminate the disability, Fordson Coal Co. v. Palko, 282 Ky. 397, 138 S. W. (2d) 456, but where there is a difference in expert opinion as to whether an operation would be attended with serious risk to life or member, or as to the advisability and result of such an operation, the injured employee is under no duty to submit to such an operation, and his refusal to do so is not unreasonable. Wallins Creek Collieries Co. v. Hicks, 216 Ky. 262, 287 S. W. 713; Consolidation Coal Co. v. Crislip, 217 Ky. 371, 289 S. W. 270; Creech Coal Co. v. Smith, 234 Ky. 166, 27 S. W. (2d) 686. Therefore the only question presented is the reasonableness of the refusal of appellee to undergo the operation insisted upon by appellant; in other words, whether there is substantial contrariety of evidence as to the hazard and result of such an operation; if so, the judgment must be affirmed under the rule that if there is any evidence of probative or substantive value in support of the findings of the board, the award must be upheld. Fordson Coal Co. v. Palko, supra.

Although several skilled physicians testified that the operation was not unduly hazardous and that in their

opinion a complete cure would be effected by such operation, all of them admitted that it is a major operation. Dr. Evans, the first physician to whom appellee was referred by appellant and who took the first X-ray pictures, was asked the following questions and gave the following answers:

"Q. Doctor, taking into consideration that these injuries were done January 4, 1938, and the nature of the fractures that you have observed from the picture, state whether or not, from your experience and as a medical man, to operate would be beneficial to the plaintiff Tom Lee or not. A. I don't think it would.

"Q. From a standpoint of labor give to the board your opinion of the effect this injury has had on Tom Lee. A. Well this injury in my opinion has put him so he is unable to work, to do any work at all in the industrial field.

"Q. In your opinion would an operation be helpful or beneficial to his condition? A. Well, I don't think it would be helpful, but it might do this, destroy the nerves and that would make him even more nervous than he is and that affects the bladder. This symphysis operation, the bladder being behind the symphysis, might do more harm to the man than good, my advice is to leave him like he is."

Dr. J. T. Tye was asked the following questions and gave the following answers:

"Q. In your opinion could the displacement of the pelvis bone at this date with any degree of certainty be operated on or repaired? A. I doubt seriously if it could at this late date, and even if it was repaired that nervous condition is such that it would be benefited but very little. He is having some trouble with his bladder and prostate glands, I think that is due to the injuries he has. The prostate glands is directly under the fracture of the symphysis and this causes a pressure on these glands and irritation from this pressure there on the glands there is causing him to have this cystitis he is having at this time.

"Q. In your opinion will this condition grow better or worse as time goes no? A. Well that is

just a guess, but I don't think it will ever be any better.''

He then testified that his only knowledge of the existence of the cystitis was the history of the case as related by appellee.

We have quoted the exact testimony of Drs. Evans and Tye because it is couched in such simple language as to be insusceptible of misinterpretation. We do not see how an award could be supported by medical testimony in any stronger terms than those used by these witnesses in answer to the questions propounded. Dr. Tye was the physician of appellee's choice and Dr. Evans was the physician of appellant's choice.

The courts will not require a patient to follow the advice of one doctor in preference to another. Especially is that true where the doctor whose advice it is insisted should be followed is a doctor selected by the party opposing the patient's claim. A patient must be accorded a certain discretion in the selection of the physician whose advice he desires to follow, and the courts will not make that selection for him, unless he refuses to make it for himself, or unless it be shown that the physician selected is not skilled in his profession. The question as to what is reasonable under such circumstances may not always be determined by the conclusion we would have reached in respect to ourselves were we in the condition of the claimant; nor is it to be tested by the opinion expressed in the testimony of any single doctor, no matter how eminent he may be. Courts will not force a litigant to again risk his life in order that the company legally bound to compensate him may be given an opportunity to reduce its liability. According to the testimony of Drs. Evans and Tye more serious injuries might result from such an operation than have already been obtained. In the face of such evidence we cannot find fault with appellee's decision to forego the operation. A patient has the right to remain in his present helpless condition, in so far as earning a livelihood is concerned, in preference to taking a chance upon additional disability which might result in an endeavor to cure his present condition. We therefore conclude that the evidence recited above strongly supports the findings and award of the board, both as to the reasonableness of appellee's refusal to submit to the operation and as to the nature and extent of his injuries.

For which reason the judgment is affirmed.