## Black Star Coal Co. v. Surgener.

May 30, 1944.

654

H. H. Owens for appellant.

Golden & Lay for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On November 23, 1941, Robert Surgener, an employee of the Black Star Coal Company, was injured in an accident arising out of and in the course of his employment. He suffered a compound fracture of the tibia or large bone of his left leg, and a large artery two or three inches below the knee was severed. He was taken to a hospital in Pineville, given an anesthetic, and the fracture was reduced. Pins were put in the bone and his leg was placed in a plaster cast. The bone failed to unite properly, and the result was what the physicians describe as a fibrous union. Surgener returned to work for the Black Star Coal Company July 23, 1942, picking slate, work which he could perform while sitting, but after two or three weeks quit and went to Detroit, Michigan, where he obtained employment in a defense plant at wages equal to or exceeding the wages he received as a miner prior to his injury. In Detroit he operated a welding machine which he manipulated with his hands. His work did not require him to stand on his feet. On October 12, 1942, he filed with the Workmen's Compensation Board an application for adjustment of his claim. The taking of proof was completed February 8, 1943, and on February 25, 1943, the company moved that the applicant be required to submit to an operation to repair the imperfect union, and that pending the operation the case be held in abeyance. The motion was overruled, and the referee before whom the hearing was held found that the applicant had a total permanent disability to the body as a whole because of the injury to his leg and awarded compensation at the rate of $15 a week during the period of total disability but not longer than ten years from the date of the accident and not to exceed the sum of $7,500. In a full board review the board concurred in the findings of the referee that the applicant was totally disabled to perform heavy manual labor in a coal mine, but modified the award by providing, in conformity with the rule announced in Consolidation Coal Company v. Ditty, 286 Ky. 395, 150 S. W. 2d 672, that the employer should be relieved of the payment of com-

pensation during the time that it furnished him employment suited to his physical condition at a wage equal to or in excess of the maximum award. The employer filed a petition for review in the circuit court, and the applicant filed an answer cross-appealing from that part of the award which modified the award of the referee. The circuit court affirmed the award of the board, and the employer has appealed. There is no cross-appeal.

Appellant poses these three questions for determination by this court:

"First, should the appellee be required to submit to operation to correct the slight physical infirmity due to lack of union of the small bone in the lower limb;

"Second, should the award be to the member alone or to the body as a whole;

"Third, should this man, who is earning $66.00 per week, who left the employment of appellant voluntarily where he was earning a sum in excess of the maximum compensation allowed, be paid any compensation at all."

Appellant is in error in stating that appellee's physical infirmity is slight and that the small bone in his leg was fractured. Its own medical witnesses, Dr. Edward Wilson and Dr. W. R. Parks, testified that the large bone or tibia was fractured, and Dr. J. G. Foley, introduced by appellee, testified that because of the imperfect union appellee is unable to bear his weight on his left leg and is totally disabled to perform any labor which requires him to stand. Dr. Wilson, who treated appellee for several months, testified: "Surgener had what you call a compound fracture of the tibia bone in the left leg. He was given an anesthetic and the stamen pins were put into the leg and fixed in the plaster cast and the open wound was given usual attention for that type of injury. He got by pretty well considering he had a compound fracture. He had very little infection of the wound. He did not seem to develop infection of the bone. I examined him from time to time in the course of 2 or 3 months and it became apparent he was not going to get the bone to give him proper bone union, which would result as a nonunion or fibrous union instead of proper union. I advised him to have an open operation performed that is after he did not have infection. He repeatedly declined any operation." He said that in order to get a substantial bony union it would be necessary to make an

incision in the leg, take the bone apart and cut and remove the fibrous matter. When Dr. Wilson advised appellee to have an orthopedic surgeon perform the operation, appellee said he was afraid of blood poison and the hot weather. Appellant based its motion to require appellee to submit to an operation on KRS 342.035, which provides that no compensation shall be payable for the disability of an employee if and in so far as his disability may be aggravated, caused or continued by an unreasonable refusal, failure or neglect to submit to or follow any competent surgical treatment or medical aid or advice. We have had occasion to construe this statute in a number of cases. Some of them are Kentucky-Jellico Coal Company v. Lee, 289 Ky. 821, 158 S. W. 2d 385; Fordson Coal Company v. Palko, 282 Ky. 397, 138 S. W. 2d 456; Consolidation Coal Company v. Crislip, 217 Ky. 371, 289 S. W. 270; Wallins Creek Collieries Company v. Hicks, 216 Ky. 262, 287 S. W. 713.

The rule deducible from these cases is that an injured employee's refusal to submit to an operation is unreasonable if it appears that an operation of a simple character, not involving serious suffering or danger, will result in substantial physical improvement, but where there is a difference of expert opinion as to the danger or result of such an operation the injured employee's refusal to submit thereto is not unreasonable. Before the question can be considered by the Workmen's Compensation Board a bona fide offer to bear the expense of an operation must have been made by the employer, and the employee must have had an opportunity to consult physicians or surgeons of his own selection in order to test for himself the advisability of the proposed operation. Here there is no proof that appellant at any time offered to bear the expense of an operation or requested appellee to submit to an operation. Dr. Wilson testified that he advised appellee to have an operation performed, but there is no proof that he was acting for appellant nor does it appear that appellee had any notice that appellant intended to invoke the statute now relied upon and that his compensation would be endangered by his refusal to submit to an operation, until the motion was filed with the board. This was after all the proof had been taken and the case had been submitted. Under the circumstances, the board properly overruled the motion. It does not follow that the question may not be raised at any time in the future if appellant makes a

proper offer and appellee is given an opportunity to consult physicians of his own selection.

Appellant next insists that appellee, if entitled to compensation at all, is entitled only to compensation for the loss of a leg, fixed by the specific schedule in KRS 342.105, and Kentucky Cardinal Coal Company v. Delph, 296 Ky. 295, 176 S. W. 2d 886, is cited. In that case the claimant's hand was crushed. There was total ankylosis of the thumb and all fingers and some ankylosis of the hand. There was no proof that the injury affected any other part of the body or that claimant's disability was greater than if he had suffered the loss of the hand. There is proof in the present case that appellee's physical handicap by reason of the injury is such as to prevent him from performing any kind of manual labor requiring him to stand on his feet and to render it impossible for him to obtain employment in a normal labor market. Appellee testified that his leg becomes numb and his ankle swells when he stands or walks, and that the bone is movable. Dr. Foley testified that appellee's leg is not straight, and that he sustained a spiral or oblique fracture about five inches in length. There is a separation of the fragments at the upper edge of the fracture, and the space between the upper and lower ends of the bone at that point is between ¼ and ½ inch in length and is filled with fibrous matter. Dr. Foley examined appellee and X-rayed his leg in June, 1942. Concerning his condition then the witness said: "At that time he wasn't able to perform manual labor. I don't think anyone would expect a man with a loose leg and fracture, would expect a man to do manual labor; if he is no better now than when I radiographed him in June, he is not able to do heavy manual labor." Dr. W. R. Parks, a witness for appellant, made an X-ray examination of appellee's left leg in November, 1942. He was asked to give the percentage of disability which appellee has as the result of the broken bone, and he answered: "I wouldn't attempt to estimate it at all. It is my understanding he is welding in a defense plant in Detroit and his work is done sitting down. I think that that is the only reason he is able to work. I do not see how it would be possible for him to stand on his feet a long period without swelling or pain and sooner or later would be totally disabled to work." On cross-examination he was asked these questions and made these answers:

"Q. Doctor, did you take hold of this man's limb and move and twist it? A. Yes sir.

"Q. Got a movement, didn't you? A. Yes sir."

The facts in the present case are similar to those in Consolidation Coal Company's Receivers v. Patrick, 254 Ky. 671, 72 S. W. 2d 51, where it was held that an award of compensation larger than the amount provided in the specific schedule for the loss of a leg was authorized, although only the employee's leg was injured. There the injury was confined to the employee's leg which was mangled and incurable sores developed. To the same effect are Black Mountain Corporation v. Adkins, 280 Ky. 617, 133 S. W. 2d 900; Hart & Commodari Construction Company v. Turner, 261 Ky. 230, 87 S. W. 2d 87. Here there is an imperfect union of the large bone of appellee's leg, the bone is movable, and he suffers pain when he stands or walks. Obviously, the disability to the body is greater than the disability that would have been occasioned by the loss of the leg. There was ample evidence to sustain the board's finding.

It is finally insisted that appellee is not entitled to compensation while he is receiving from another employer wages equal to or in excess of the wages earned by him as a miner. A similar contention was made in Fulton Ice Company v. Meacham, 273 Ky. 483, 117 S. W. 2d 195, 197, and we said:

"The evidence shows that appellee is unable to do manual labor, the only kind of work he is fitted to perform, and the fortuitous circumstance that he was able to obtain employment as a watchman, probably temporarily, should not defeat his claim."

It was a fortuitous circumstance that appellee was able to obtain temporary employment in a defense plant at a time when any sort of labor was in demand. Appellant's own witness, Dr. W. R. Parks, said: "As soon as the war is over these jobs such as he is on will be over and when he enters the labor market he will find himself being rejected."

The judgment is affirmed.