## Melcher v. Drummond Mfg. Co. et al.

January 27, 1950.

Rehearing denied May 5, 1950.

William H. Field, Judge.

William C. Edrington for appellant.

Davis, Boehl, Viser and Marcus for appellees.

CHIEF JUSTICE SIMS—Reversing.

This is an appeal from a judgment of the Jefferson Circuit Court, Common Pleas Branch, Third Division, affirming an award of the Workmen's Compensation Board, hereinafter referred to as the Board. Fred C. Melcher suffered permanent total disability as a result of a hernia received in the course of his employment, for which the Board awarded him $15 per week for 52 weeks because under KRS 342.025 he refused to submit to an operation offered by his employer.

There is no conflict in the material facts and the controversy involves only a question of law, hence the finding of the Board may be reviewed by the courts. Melcroft Coal Co. v. Hicks, 224 Ky. 173, 5 S. W. 2d 1049; Wilson Berger Coal Co. v. Metcalf, 231 Ky. 93, 21 S. W. 2d 112.

On May 21, 1946, while engaged in heavy lifting in his employer's plant, Melcher suffered a left inguinal hernia. It is admitted this injury caused him permanent

total disability, unless his condition can be remedied by a surgical operation offered him by the company.

Section KRS 342.025(3) relates specifically to hernia and provides in part:

"If the examination does not disclose the existence of disease or other physical condition rendering the operation more than ordinarily unsafe, and the employe, with the knowledge of the result of such examination, thereafter refuses to submit to such operation, he shall be entitled to compensation for disability under the general provisions of this chapter for not exceeding one year. If the employe submits to the operation he shall, in addition to the surgical benefits herein provided for, be entitled to compensation for his actual disability following such operation. If the hernia results in death within one year after it is sustained, or the operation results in death, such death shall be deemed a result of the injury causing such hernia and compensated accordingly under the provisions of this chapter. This subsection shall not apply where the employee has refused to submit to an operation which has been found by the examination herein provided for not to be more than ordinarily unsafe."

In KRS 342.035(2) appears this language:

"* * * No compensation shall be payable for the death or disability of an employee if his death is caused, or if and in so far as his disability is aggravated, caused or continued, by an unreasonable failure to submit to or follow any competent surgical treatment or medical aid or advice."

The opinion in Black Star Coal Co. v. Surgener, 297 Ky. 653, 181 S. W. 2d 53, 54, refers to four cases wherein we construed KRS 342.035(2). It was there written:

"The rule deducible from these cases is that an injured employee's refusal to submit to an operation is unreasonable if it appears that an operation of a simple character, not involving serious suffering or danger, *will result in substantial physical improvement,* but where there is a difference of expert opinion as to the danger *or result of such an operation* the injured employee's refusal to submit thereto is not unreasonable." (Our italics.)

From the words we have italicized it will be noticed that the injured employee is under no duty to submit to the operation, if there is a difference in expert medical opinion as to whether it is dangerous, or if there is a difference of such opinion as to the beneficial results to be derived therefrom. This same idea was expressed in Kentucky-Jellico Coal Co. v. Lee, 289 Ky. 821, 158 S. W. 2d 385, which was cited in the Surgener case. From an annotation in 105 A. L. R. 1470, the rule announced in the Surgener opinion appears to be followed in many other jurisdictions.

Appellee company insists that KRS 342.035(2) and the cases construing it are not applicable here, as KRS 342.025 relates specifically to hernia while the former statute relates to compensation cases generally, citing Black Motor Co. v. Spicer, 290 Ky. 111, 160 S. W. 2d 336, and City of Olive Hill v. Parsons, 306 Ky. 83, 206 S. W. 2d 41. The chances are that the reason the General Assembly enacted a specific statute relative to a hernia operation is that it is often difficult to determine whether the hernia resulted from the alleged injury or was of long standing in a latent form, and that generally a herniatomy is not only safe but is reasonably certain to effect a cure. However that may be, the test is practically the same as to the duty of the employee to submit to an operation whether for a hernia or any other injury; to-wit, if there is a difference of opinion among medical experts as to the danger or as to the beneficial results of the operation, it is not incumbent upon the employee to submit thereto.

There is nothing in the Spicer or Parsons opinions which militates against what is said here. Nor has the Parsons opinion any particular bearing on this case on account of its holding that an employee was not obligated to submit to a second herniotomy. The Parsons case dealt with a second operation for the same hernia, while in the instant case Melcher suffered two different hernias with almost a quarter of a century intervening between the two injuries, as we shall later see.

We will now look at the medical testimony and apply the above rule to it. Only one physician, Dr. Charles W. Jefferson, testified as to the danger of the herniotomy and its probable remedial effect upon Melcher.

Therefore, there is no contrariety of medical opinion in the instant case.

The record shows Melcher was 59 years of age when the company offered him the operation, and that in 1922 he had been operated on for a hernia suffered then. Dr. Jefferson when asked if there was any danger in operating on Melcher for a hernia, stated there was not. But he said it was questionable whether the operation would benefit the patient due to the fact he had previously undergone a herniotomy in 1922. The Doctor did not know whether the fascia could be retracted enough to bring it over, and after it was sutured to the puparts ligament, he did not know whether it would hold. Dr. Jefferson further testified: "The trouble with going in after there has been an operation is that you may get a lot of adhesions to the spermatic cord. There is danger of injuring the spermatic cord in trying to free it from adhesions from the herniotomy." When asked what was his opinion and advice relative to Melcher undergoing the operation, the Doctor replied, "* * * Now he may go on and do pretty well with a truss, I don't know. I think if it was me I would rather go on with a truss. I wouldn't want to tackle it the way it is."

In view of Dr. Jefferson's testimony that the result of this operation would be speculative as to the benefit the patient would derive from it, and that if he were the patient he would rather risk the benefit from wearing a truss than from an operation, we cannot say that it was Melcher's duty to submit to the operation.

The judgment is reversed with directions that the circuit court remand the case to the Board for proceedings consistent with this opinion.