## Black Star Coal Co. v. Powers et al.

(Decided Jan. 19, 1934.)

J. B. SNYDER for appellant.
GOLDEN, GILBERT & GOLDEN for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

Ted Powers, on October 13, 1931, filed an application before the Workmen's Compensation Board for compensation for an injury received by him in the service of the Black Star Coal Company on February 16, 1931. The board, on November 15, 1932, made a final order in favor of Powers, fixing his compensation at $6,000. The company took the case to the circuit court, which sustained the action of the board, and the company appeals.

The facts of the case are these: The parties had accepted the provisions of the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.) and were working under it. Powers was earning sufficient amount of wages to entitle him to the maximum compensation, if he was entitled to recover at all. He had been in the employ of the coal company for eight or nine years. Early in the morning of February 16, 1931, he had shot twelve sticks of black powder in his working place and had retired to permit the smoke to clear away. He went back to the place of work, where he was driving an entry, a little over two hours later. He had loaded about two cars when, as he testified, he began to feel funny and fell over; that the mine seemed like it was going and coming. His brother got to him, took him down the entry, and later he was carried to his home. The place in the mine, where Powers was working, was more than 200 feet ahead of air and ventilation. There were three breaks below where he was working and no curtains. From the center of one break to the center of the next it was 67 feet, and he was about 25 feet past the third break. He had, on several occasions, complained to the company of this condition, but had been told to go on to work, they would fix it as soon as they could. The fact was the company had turned off part of the force that did this work, and this was one cause of the trouble not being remedied. A little air was carried in as the motor which pulled the car would push in there. But aside from this there was no ventilation, as the air would turn at the breaks before it reached the place where Powers was working. Prior to his injury Powers was in good health, strong, and able to do as much work as the other men. The evidence for Powers is to the effect that, when he returned to work, as above

stated, he inhaled a dangerous quantity of carbon monoxide gas, and that this has affected his vital organs to such an extent that he is unable to work and his condition is permanent. He had been working under these conditions for several days, and according to the evidence for him his blood is in bad condition The carbon monoxide poison had affected the red blood cells and his vital organs, rendering him unfit to work. He was still in this condition when the evidence was closed, and his doctors testified that his condition was permanent.

On the other hand, the proof for the defendant, by doctors, was that his condition was not permanent, and that he was really suffering only from the effect of the smoke upon him.

By section 1 of the Workmen's Compensation Law (Ky. Stats. sec. 4880), see Kentucky Statutes, sec. 2729-1, an injury "due" to the inhalation in mines of noxious gases or smoke, commonly known as bad air, is compensable under the act.

The first question made on the appeal is as to the regularity of the procedure. The referee, to whom the case was referred, filed his award on July 5, 1932, finding the facts as above stated under the proof, and fixing the amount of compensation at $6,000. . On July 9, the company filed a motion to set aside the award and for a full board review. On September 6, the board sustained the motion for a full board review, and, it appearing to the board that through a pyrotannic acid test it could be determined whether or not carbon monoxide was in the blood stream of the plaintiff, the award was set aside, and the plaintiff was ordered to appear before Dr. E. S. Maxwell on the 20th day of September, 1932, for the purpose of having the pyrotannic acid test made; Dr. Maxwell to report to the board, and his report, when filed, to be made a part of the record of the case. On September 9, 1932, the plaintiff moved the board to amend this order so as to grant him objections and exceptions thereto. On September 12, the order was amended by adding these words: "To all of which the plaintiff did at the time object and except and still excepts." On September 14, 1932, the plaintiff filed affidavits and moved the court to set aside the order of September 6th. On September 19, the company filed response to this motion. On September 28, it entered motion for time for further proof, and, on Sep-

tember 30, entered a motion for oral argument before a full board. The final judgment of the board was entered after all this on November 15, 1932, and in that order the board set aside its order of September 6, under all the proof before it, and sustained the award made by the referee. Kentucky Statutes, sec. 4902, provides:

"Upon its own motion or upon the application of any party interested and a showing of change of conditions, mistake or fraud, the board may at any time review any award or order, ending, diminishing or increasing the compensation previously awarded, within the maximum and minimum provided in this act, or change or revoke its previous order, sending immediately to the parties a copy of its subsequent order or award. Review under this section shall be had upon notice to the parties interested and shall not affect the previous order or award as to any sums already paid thereunder."

Section 4934, Kentucky Statutes, also provides:

"If an application for review is made to the board within seven days from the date of the award the full board, if the first hearing was not held before the full board, shall review the evidence, or, if deemed advisable, as soon as practicable, hear the parties at issue, their representatives and witnesses, and shall make an award and file the same in like manner as specified in the foregoing section."

Section 4902 has no application to the facts presented here. The order of the full board on September 6 was simply an order opening the case and permitting additional evidence to be introduced. This was simply an interlocutory order, and, when it was subsequently shown that this new evidence would have no effect upon the case, it was within the power of the board to set it aside and enter judgment upon the whole case. The proceedings were therefore within the power of the board.

There was no material error in refusing to allow the amended answer to be filed. The whole defense was presented by the general issue, and all the evidence was properly admitted. If the amended answer had been filed and controverted of record, the result would have been just the same.

It is also insisted that the final order of the board does not appear to have been made by the full board. But the case, as shown by the record, was before the full board. The full board had taken the previous action that was taken in the case on September 6, and only the full board had jurisdiction to make the final order in the case. The record must be read as a whole. The parties plainly so understood it at the time, for the defendant appealed to the circuit court from this order, and this objection cannot be made here for the first time.

It is also insisted that the evidence for the plaintiff was insufficient, and that the evidence for the board was conclusive. But the rule is well settled that, if there is any evidence, the judgment of the board will not be disturbed on the proof. While there was some conflict in the evidence of the doctors, there was the evidence of several physicians for the plaintiff positively making out his case, and the court cannot say here that there was no evidence warranting the judgment of the board.

It is true that there was some evidence, from which it would appear that the doctors who had examined the plaintiff, and testified on his behalf, had not been paid by him, and perhaps would never be paid unless he recovered in this action. But this only went to their credibility. Lack Iron Co. v. Graham, 147 Ky. 161, 143 S. W. 1016.

The $6,000 awarded Powers is payable in monthly installments through a series of years, as provided by the statute. If at any time it is made to appear to the board that there is a change of condition, or that by mistake or fraud the award was procured, the board, on the application of the defendant and a showing of the facts, may, under section 4902, Kentucky Statutes, review its award and make such change as is right under the existing facts. The appellant under this section, if a mistake was made, may yet protect its rights by a proper showing of the facts.

Judgment affirmed.