724

HUFFAKER, HOGAN & BERRY and D. L. FREDERICK for appellant.

L. FRANK WITHERS for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellee, F. R. Triplett, a carpenter, while engaged in work on the new post office building in Louisville, Kentucky, on November 9, 1931, sustained serious injuries as a result of a fall. He filed his application with the Workmen's Compensation Board alleging that his injuries were total and permanent, and on a hearing of the case the board allowed him compensation of $15 per week for eight years, a maximum of $6,000, as provided by section 4897, Kentucky Statutes. An appeal was taken from the award of the board to the circuit court, and on a review of the case the court confirmed the award allowed by the board. Hence this appeal.

The appellant concedes that Triplett has been per-

manently partially disabled within the meaning of section 4899, Kentucky Statutes, but insists that his disability is not total, and that his award should have been as provided by section 4899 instead of 4897. The sole question for determination in this case is the sufficiency of the evidence to sustain the award allowed by the board.

Triplett testified that he fell from a floor joist a distance of between 14 and 16 feet to the ground, and struck on his head and shoulders. His evidence respecting the fall and the manner of striking is not disputed. He was immediately taken to the hospital for treatment, and put on what he denominated a "Bradford" frame, described thus: "That is a frame made out of piping with cloth stretched over it with a raise in it of about nine [9] inches they had under my back to raise the spine, to draw the curve out of my spine." He stated that he was required to lie on his back all the time for eight weeks, three weeks at the Baptist Hospital, and then he was taken home and was required to lie in the same position for five weeks. He said he was in misery all the time in his spine, and was hurting from his head down his spine the whole time he was in the hospital and was still that way; that his clavicle was broken and his right shoulder was about two inches lower than the left shoulder; that since the accident he had slept only about two hours at night and it was necessary to elevate his back while in bed; that after they took him out of the frame he was put in a brace, which came up around under his arms with crutches under it and up his spine and fastened around his hips with a steel belt and a girdle over the stomach, and he wore this brace until in the month of May, and then the doctors had another one made which he terms a "spinal brace"; that the doctors treated him from the date of his injury, November 9, 1931, to October 29, 1932, and at that time he could not see any change in his condition. He described various other treatments by the doctors, but said that none of them seemed to do any good.

Respecting his ability to work, we note the following questions and answers thereto:

"Q. Mr. Triplett, are you able to work? A. No, sir, I am not able to work; I cannot stay up over six or seven hours at the most during the day; I have to lie down and rest as much as three or

four hours out of a day; it throws me in misery from my head, chest and down my spine.

"Q. To what extent if any has the use of your limbs and body been interfered with? A. I cannot stand on my right leg long at a time, I cannot walk over two or three squares without resting a few moments."

He further stated that he could not use his arms but very little, and when he moved his arm it throws the clavicle out some way and caused him pain and misery; that he could not walk up to a faucet and stick both arms up at once to get a drink out of a glass; that he could not stoop or bend over or go to either side because of the pain or misery it caused in each side of his ribs, and could not twist his body without suffering pain; that when he put on his right sock and shoe he had to lie down mostly because he could not bend over or raise his leg.

The trial of this case before the Compensation Board was more than a year after Triplett sustained his injury.

Dr. Speidel, who testified for Triplett, stated that he examined him on February 22, 1933, and found him to be complaining of pain in the back extending from the base of the skull to the twelfth dorsal vertebra, which is rather near the lower end of the back. He also complained of pain around the chest from the vertebra to the breast bone from the third to the sixth rib and weakness and numbness in the right leg between the hip and the knee; that his right shoulder was markedly lower than the left shoulder and deformity of the surface of the chest, and when attempting to bend over there was considerable rigidity of his spine and could not bend more than at a right angle and could not put his hands down to within two feet of the ground when he bent over, and when he bent over as far as he could there was rigidity of his spine involving the lower dorsal vertebra, and the tenth, eleventh and twelfth dorsal vertebræ seemed to be impaired so far as movement was concerned. The deformity on the anterior surface of his chest was due to the dislocation of the inner end of the clavicle, which were dislocated at their junction with the breast bone. Dr. Speidel described and enumerated many other disorders of the spine and reflex actions and an abnormal nervous condition. An X-ray disclosed the

fracture of the clavicle and many other injuries above described.

With reference to Triplett's ability to work, we observe the following questions and answers thereto:

"Q. Doctor, is the ability of this man for work impaired? A. Yes, sir.

"Q. To what extent is his ability for work impaired? A. I understand that this man is a carpenter, who does construction work, builds concrete mould, concrete forms on buildings, and I should say that it would be impossible for him to climb and balance himself, and lift heavy objects and maintain his equilibrium; I think it would be exceedingly dangerous for him to climb up to any height at all above the ground.

"Q. Then for the work of a carpenter, doing such work as he was performing at the time of the accident, what would be the extent of his disability? A. I should say it was complete.

"Q. In your opinion, how long will this disability continue? A. Permanently."

Dr. Keith's testimony corroborates Dr. Speidel respecting Triplett's injuries and ability to work. He stated, however, that Triplett might be able to do light work, but he would be unable to climb on buildings or carry any heavy loads on his shoulder. In answer to the question as to how long Triplett would be unable to work, Dr. Keith said:

"I think he has got all the improvement he is going to get as far as I can determine. I understand it has been 18 months since he was injured."

Dr. Richmond, who was called as a witness for the appellant, defendant below, did not very strongly contradict Doctors Speidel and Keith who testified for Triplett respecting Triplett's injuries. He stated that Triplett could not do the type of work that he was doing before he was injured, but gave it as his opinion that he had a permanent disability of about 25 per cent. as a carpenter. But he indicated that he was basing his conclusions upon the fact that Triplett was able to do light work as a carpenter, but admitted that he was disabled from performing all the general work of a carpenter and that particular kind in which he was engaged at the time of his injury.

However, in this class of cases, we are not concerned with weighing or determining conflicting evidence or judging the preponderance of the evidence. The sole question is whether or not there is any evidence of a probative and substantial nature tending to support the finding of the board. Upon the evidence produced in this case, the board found as a matter of fact that Triplett has sustained a permanent total disability as a consequence of the injuries received.

It is a well-settled rule that "total disability" does not mean absolute helplessness or entire physical disability. It means loss of earning power as a workman, in consequence of the injury, whether the loss manifested itself in inability to perform such work as may be obtainable or inability to secure work to do. Consolidation Coal Co. v. Crislip, 217 Ky. 378, 289 S. W. 270. In the Crislip Case, supra, it was held that an injured employee is "totally disabled" when he is disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment. Conceding, without deciding, that Triplett is able to perform some light work as a carpenter, yet it is common knowledge that he would find difficulty in obtaining employment as a carpenter unless he was physically able to discharge all the duties ordinarily expected and required of a carpenter.

In view of the evidence of Triplett and Drs. Speidel and Keith, it cannot be said that Triplett is not disabled to perform the duties of a carpenter in a substantial and efficient manner as he did before his injury, and, therefore, he is totally disabled within the meaning of that phrase as above defined. Lehigh Construction Co. v. Womble, 251 Ky. 150, 64 S. W. (2d) 479, and cases cited therein; Moore v. Peet Bros. Mfg. Co., 99 Kan. 443, 162 P. 295.

The board's award being thus supported by competent evidence, its findings of fact are conclusive and will not be disturbed. Consolidation Coal Company's Receivers v. Patrick, 254 Ky. 671, 72 S. W. (2d) 51; Black Star Coal Co. v. Powers, 252 Ky. 736, 68 S. W. (2d) 30.

The evidence in this case, viewed in the light of the authorities herein cited, impels us to the conclusion that it is sufficient to support the finding of the board.

The judgment is affirmed.