## Wheeler v. Justice et al.

Jan. 29, 1943.

J. E. Childers and W. G. Wheeler for appellant.

J. J. Moore for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

James Hatcher of Pikeville, Kentucky, died on September 29, 1939. He executed a will in which he designated appellees and defendants below as executors and trustees of his estate and to carry out the provisions of his will, in which a trust was created. He died the owner of a large amount of property, consisting of lands, leases, and considerable personalty. The designated executors and trustees of his estate qualified as such after the will was probated.

The appellant and plaintiff below, Dr. J. C. Wheeler, in due time presented to them a claim for professional services alleged to have been rendered by him to the decedent during his life, beginning in the year 1929 and extending throughout the remainder of decedent's life, which amounted to $7,499.99. Payment was refused by defendants, followed by this action against them in the Pike circuit court to recover judgment for the amount thereof. The answer denied the rendition of the services and invoked the statutory limitation of five years in bar of all services rendered previous to that time, which was back of September 29, 1934. The court sustained that plea, thus eliminating from the case the alleged services rendered between September 29, 1934, and the same day and month in 1929. An amended answer was filed wherein it was averred that if plaintiff during the recoverable period rendered any of the services alleged in his peti-

tion, with the intent and expectation to be paid therefor, then the reasonable value did not exceed $200, for which he had been paid.

Following pleadings made the issues and upon trial by a jury, after evidence heard, it returned a verdict for defendants. Plaintiff's motion for a new trial was overruled and judgment rendered dismissing his petition, to reverse which he prosecutes this appeal. While the motion for a new trial complained of the instructions of the court, and of the admission of incompetent testimony introduced by defendants, as well as the rejection of that offered by plaintiff, yet the brief of plaintiff's counsel makes no reference to either of those grounds, and confines his argument exclusively to (1) alleged error of the court in not adjudging the burden of proof on defendants, inasmuch as they pleaded payment of all services of plaintiff not rendered gratis, and (2), that the verdict is not sustained by the proof. To those two grounds only will the opinion be addressed.

1. Ground (1) argued by counsel is wholly unsustainable even if his premise therefor be correct, since the burden of proof was voluntarily assumed by plaintiff without any motion or request with reference to it. No such request was made or acted on by the court. Under well settled principles of practice—not only in this jurisdiction, but also in others—any objections relating to the question as to which litigant has the burden of proof, was waived in this case, and which renders ground (1) unavailable on this appeal.

2. Ground (2) is, of course, to be determined by the competent evidence heard at the trial. Plaintiff, under the provisions of section 606 of our Civil Code of Practice, was forbidden to testify on any of the relevant issues of fact, and which the court so adjudged and declined to admit such testimony, which ruling is not attacked. However, plaintiff proved by a nurse, whom he retained in his office as a secretary, the rendition of some services claimed in his petition during the five years immediately preceding decedent's death, i. e., she testified that telephone calls came to plaintiff's office requesting his attendance upon the decedent, and some visits were made by him to plaintiff's office during that period, and which strongly indicated that the services were rendered; but, of course, she was not present at the place visited by the plaintiff if he did so. There was other fragmentary tes-

timony tending to establish the rendition of at least some service by plaintiff to the decedent during the recoverable period.

On the other hand, it was shown by witnesses of defendants, and admitted by plaintiff, that among the numerous holdings of decedent was a coal mine, operated in the name of James Hatcher Coal Company, located some five miles from Pikeville, in Pike County, and tha'. about the year 1929 plaintiff was employed by decedent— who was president of that company and owned the great majority of stock—as physician for the miners working for the company. At that time Mr. Hatcher lived at the location of the mine, and continued to do so for sometime thereafter. Likewise, plaintiff—as we gather from the record, for at least awhile—also resided there and practiced his profession. However, he later moved to Pikeville, but continued his employment as physician for the coal miners. Naturally plaintiff became a fast friend to decedent, which appears to have been reciprocated by the latter.

During 1930 decedent began the construction of a large and commodious hotel in Pikeville, which after completion, was given the name of the Hatcher Hotel. At the beginning of the construction thereof decedent moved to Pikeville and acquired a residence adjoining the site of the contemplated hotel building. His wife had long since died, leaving no children, and decedent never married thereafter. While he resided at the location of his coal mine, he made his home with J. B. Poley and his wife, who had no children, and a lasting friendship was the result of such association. When the decedent moved to Pikeville the Poleys accompanied him and took up their abode in the newly constructed residence adjoining the hotel property. After its completion decedent reserved two adjoining rooms therein, one for Poley and his wife and the other for himself, which they occupied, at least at intervals, from that time until decedent's death.

About the year 1930 decedent became afflicted with arthritis, prostate trouble, and, perhaps, other ailments, but none of which, or all of them combined, confined him to his room or prevented him from personally looking after and managing his vast interprises, except on a few occasions during which he generally visited some kind of springs at Dillsboro, Indiana, from which he ordinarily

got relief. At the beginning of such occasions, and before visiting the Indiana resort, he called on some local physician for treatment, chief among which was Dr. W. D. Flannary, whose partner in the practice at Pikeville was one Dr. Gose. Also engaged in the local practice was one Dr. Osborne, and another physician by the name of Berman, from all of whom decedent received treatment for some one or more of his ailments. Dr. Berman was a more or less specialist in the treatment of the prostate trouble, which, with other complaints, would confine decedent to his home. On such occasions Dr. Berman seems to have been his chief physician, with the assistance of Dr. Flannary. Dr. Flannary testified that he did not remember seeing plaintiff at the bedside of decedent but a few times throughout the services performed by the witness.

Such was the substance of the proof to establish plaintiff's claim. Though called upon by motion to file an account, with dates and charges covering his account, he failed to do so on the ground that he kept no account of the services rendered to the decedent throughout the entire period of those alleged in his petition, which itself is a radical departure from the ordinary course pursued in such transactions, thus casting some suspicion on the genuineness of the claim made by him. However, in his petition he set out from memory the number of visits and the character of services rendered for each year embraced by his account. No evidence from druggists who may have filled prescriptions given by plaintiff was attempted to be introduced, nor did any such witness testify in the case.

In addition to that already recited defendants introduced in their behalf Mr. and Mrs. Poley—one of whom, and many times both of them being with decedent whensoever his complaints became such as to confine him to his home—and each of them testified that plaintiff did not visit decedent more often than on an average of once per month throughout the five years preceding his death. They also testified that Mr. Hatcher was an adherent to the policy of "paying-as-you-go," thereby establishing his punctuality in discharging claims against him and disallowing the accumulation of outstanding indebtedness, and which appears to have been his course of action. The Poleys also testified that when Dr. Wheeler would call on decedent the latter would request the one or the

other of them who was present to pay plaintiff for his services, but that the doctor would remark that "He (referring to decedent) has done too much for me to charge him for any services I might render." Nevertheless decedent would insist on making payment, to such an extent that he would direct one or the other of the Poleys (whichever one was present) to get his pocketbook and pay plaintiff, which they testified they did on some occasions, when sums of $5 and $10 would be paid, notwithstanding plaintiff protested his determination not to make charges therefor. Such transactions with reference *to payment* were denied by plaintiff in rebuttal; but we are unable to find where he expressly denied the statement of the witnesses that his services were gratuitous.

In 1931 the decedent was elected to the office of Railroad Commissioner from the Third Railroad District of Kentucky, and was an active member of that Commission throughout his four-year term, beginning the first Monday in January, 1932. The undisputed proof shows that during that period he was away from home attending to the duties of his office for at least half of the time. Defendants also proved by the witness, J. B. Poley, that shortly after filing this action he met plaintiff on the streets of Pikeville and was requested by him to go up to his office, which witness did, and in the conversation between them at that time plaintiff inquired of witness as to whether the latter had heard about the action filed by plaintiff against the Hatcher estate, which witness affirmatively answered. Plaintiff then said to the witness that he and his wife had rendered to decedent, for many years prior to his death, most valuable services for which the law would entitle them to recover and a charge therefor of $25,000 would be most reasonable. But the witness declined the insinuated suggestion and informed plaintiff that he had no intention of making any such claim. That conversation was denied by plaintiff, though he does not appear to have denied meeting the witness in his office at the time testified to. It was for the jury to determine whether that conversation occurred as stated by the witness, and if they saw proper to find that it did, then that fact clearly indicated that plaintiff was in all probability desirous to obtain the assistance of the Poleys in the establishment of his claim.

The court submitted to the jury by its instructions the contested issues of (a) the rendition of the services;

(b) payment therefor, and (c) if rendered, whether or not they were gratuitously rendered with no intention to charge therefor. We, of course, are not informed upon what issue the jury based its verdict, or whether it was done upon a finding that the proof sustained all of them. At any rate, we are not prepared to say that there was insufficient evidence to sustain their submission or the finding of the jury on any one of them in the light of the testimony we have rehearsed. It is, therefore, concluded without setting out the testimony in greater detail, that the court committed no error in its instructions, and that the verdict of the jury was amply supported by the testimony.

Wherefore, the judgment is affirmed.