## Kentucky Cardinal Coal Corporation v. Delph et al.

Oct. 26, 1943.

Murray L. Brown for appellant.

Golden & Lay for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellee, an experienced miner about forty-three years of age, at the time of his injury was operating a coal cutting machine in appellant's mine, and while thus

engaged a large quantity of rock fell, catching and badly crushing his hand and wrist. It is agreed that Delph received his injury in the course of employment; that parties were operating under the Act; that his wage was sufficient to entitle him to maximum compensation.

On February 10, 1942, all interested parties signed an agreement to the effect that Delph's disability was temporary total, followed by 85 percent permanent partial. Settlement was had on a basis of $15 per week for 22 weeks and $10.20 for 128 weeks. Delph signed a receipt for a total of $1,635.60. The settlement was approved by the Board on February 26, 1942. On March 4, 1942, Delph moved the Board to set aside the order of approval and filed application for adjustment. In support he filed his affidavit in which he said that in making the settlement he had been advised by the company and the insurance carrier that he was only entitled to 85% compensation for loss of his hand, and that the company would find him light employment, which promise they had failed to carry out; further that he was unable to secure employment because of the disability. He said he had been informed that under the law his injury should not have been limited to the loss of use of his hand, since there had been no amputation, but that so far as use is concerned there is greater disability than if his hand had been removed. Counter affidavits denied the charges and asserted that settlement was made fairly and upon Delph's insistence for a cash settlement so that he might buy a small farm.

On April 21, 1942, the Board, over objection, reopened the case. The plaintiff introduced proof, and upon closing the Board sustained appellant's motion to have Delph to submit to an examination. On June 16, 1942, appellant in writing offered to Delph an operation at its expense, by competent surgeons to be agreed upon by parties, with a view of removing the injured member. This was declined, however, the Board naming Dr. Carr to make the examination. The exception to the order reopening the case was passed to merits.

On the question of extent of injury the Referee said: "There is doubt in the minds of defendant's doctors whether it would be better to amputate the hand above the wrist or leave it as it is. It seems to us that the hand is useless as it is, but we think the plaintiff is within his rights in not submitting to the offer of an amputation

operation. From common sense and reason we know a man with only one hand * * * would not be totally permanently disabled, if he were otherwise qualified to perform certain work, such as watchman, clerical or other light work. The plaintiff is not qualified to do any work that requires an education. If he was able to do many jobs around a coal mine, the defendant or no other employer would employ him because of the condition of his right arm; * * * if he is unable to obtain employment he is totally disabled.''

The Referee recommended compensation at $15 per week for a period not to exceed ten years, or a total of $7,500 with credits of amounts theretofore paid. Appellant called for a review, and the Board after review affirmed the Referee's finding. Appellant filed petition for review and the circuit court upheld the Board. While appellant set up numerous grounds for reversal in the circuit court, these are reduced to arguments: (1) That there is no conflict in the medical testimony, which it is claimed shows that the injury is confined to the right hand, and due to ankylosis, a consequence of Delph's failure or refusal to submit to amputation of the member. (2) It is argued that the injury to the hand falls within the meaning and intent of KRS 342.105, for loss of hand or arm, or that award should have been made, according to the proof, under KRS 342.105, providing compensation for ankylosis.

The injury to Delph occurred on August 28, 1941. Up to the time of the agreement employer had paid Delph something, including medical and hospital bills. The agreement, signed February 10, 1942, was approved by the Board on the 26th. The receipt, received by the Board on February 23, was not dated. Delph's application for ''adjustment claim'' was sworn to by him on February 27, 1942, and his motion to reopen the case was received by the Board on March 4, 1942. These dates are significant. Delph alleged in his affidavit that he had been misled as to the extent of his injury; he does not by any proof justify this claim, since before he signed he consulted at least one physician and perhaps two on this point. He says that he signed because of inducement by proffer of light work by employer, a charge that is not sustained by the proof in respect of employment prior to the filing of his motion to reopen, a move set in operation one day after the signing of the agreement. It is doubtful as a matter of law that such a promise, if made,

and failure to carry it out, constituted fraud. A promise in itself is not a false representation. A charge of fraud may be predicated only upon non-performance of a promise where the promise is accompanied by the present intention not to perform, and made to deceive the promisee. Kentucky Road Oiling Co. v. Sharp, 257 Ky. 378, 78 S. W. (2d) 38. Here Delph, according to record figures, gave the employer only a brief time in which to carry out its agreement, if there was such, prior to the time he elected to ignore his agreement. After he got his check, two weeks after agreement, he told some one in the office he would like to go back to work, and he was then handed a slip (not dated) which apparently was intended for the insurance carrier, since it said that employe was incapacitated and the company had no available work for him, and he was "separated" from benefits.

Delph testifying told of the manner of his injury, and made it clear that the hand was useless to him, except for limited purposes. He could not handle tools with that hand. He said that he had applied to the employer, and to two or three other mines, but had been denied, or had not received employment, and that he had done no work since the injury. He does not make it clear in his proof as to the times or dates when he sought mine employment, except in the one instance above mentioned.

The medical testimony turned rather to the question as to whether or not Delph's disability could be lessened in degree by the amputation of the hand, a matter upon which the physicians seemed to agree in the affirmative, and which Delph had strongly insisted upon when under primary treatment. Whether Delph should have accepted the proffer of employer, it being shown amputation could be done without much pain or any danger and with improving results, we need not discuss.

Dr. Foley, testifying for, and who had examined Delph at various times and made X-Ray pictures, made his last examination on June 12, 1942. He described the injury, and as a result of his last examination testified that there was total ankylosis of the thumb and all fingers; the metacarpal bones had been mashed, and some ankylosis of the wrist. He found no "general paralysis of the hand" which would account for some "sensation to pain on touch." Asked his opinion as to the extent of disability as a result of "these injuries,

that is permanent disability from performing labor,'' the doctor answered: ''In per cent he is one hundred per cent disabled to do manual labor. The hand is a total loss as far as labor is concerned.'' On cross-examination he explained that by use of the term ''one hundred per cent,'' he referred to the hand and wrist; ''that is all I found any injury to.'' He expressed the belief that while the injury was confined to the hand, it ''disqualified him to do manual labor to the body as a whole.'' Dr. Foley, as had one other doctor, made general physical examinations and found Delph otherwise physically sound.

The Board, in awarding the limit for total permanent disability, cited the case of Leckie Collieries Co. v. Branham, 275 Ky. 748, 122 S. W. (2d) 776, in support of its conclusions that it should take into consideration the lack of opportunity to obtain employment, in the evaluation of the extent of the injury. The Leckie case cites with approval Olson v. Triplett, 255 Ky. 724, 75 S. W. (2d) 366, and perhaps others of similar character and import. There is no doubt of the soundness of this rule as applied in cases where the measure, extent and duration of the disability arises under cases compensable under Ky. Stats. sec. 4897, KRS 342.095, total permanent disability, or under consideration as to extent within the limitations of Ky. Stats. sec. 4899, KRS 342.105. It may be noted that the first section, supra, (a) provides specifically that the loss of both hands, at or above the wrist, is to be considered as total permanent disability, indicating that under 342.105 KRS the loss of one hand, or an arm, or ankylosis of all fingers was to be limited to compensation fixed therein, with exception noted in the last paragraph, which limits awards for other cases of permanent partial disability, including disfigurement, to the schedule fixed, not to exceed in time 385 weeks, or a maximum of $4,000.

By the statutes referred to the legislature definitely fixed the awards to be made for partial permanent disability, occasioned by the specific injuries described or ''other injuries,'' into one of which classes Delph's disability undoubtedly falls. It provides that for the loss of a hand (which we have indirectly construed to mean ''physical'' loss; Brook's case infra) the award shall be 65% of weekly wage for 150 weeks, the same percentage for 200 weeks for the loss of the entire arm. Paragraph (11) of the last named section provides for

compensation where there is ankylosis "which makes the fingers more than useless," for the same number of weeks as apply to the loss of fingers, at the same percentage of weekly wage; where there are several fingers ankylosed, the percentage and extent of time are combined, as we held in Fame Armstrong Laundry Co. v. Brooks, 226 Ky. 22, 10 S. W. (2d) 478. We held in that case that there should be no award under the general total permanent disability statute, due to the provisions of the last paragraph of Ky. Stats. sec. 4899, now KRS 342.110. See also Wirth Lang Co. v. Meece, 211 Ky. 520, 227 S. W. 834.

The Board, as indicated, found that the settlement was made "in a lump sum on the basis of 85% injury to the hand under our specific schedule." The Board said that it found its legal power to compensate under the "general sections" rather than the specific schedule in Consolidated Coal Co.'s Receivers v. Patrick, 254 Ky. 671, 72 S. W. (2d) 51, which opinion bases the "principle" on Lehigh Construction Co. v. Womble, 251 Ky. 150, 64 S. W. (2d) 479. The argument in the Patrick case was that the Compensation Board had no legal right to award total disability to the body as a whole for the loss of a limb which does not affect any other part of the body. We suggested that the argument was completely answered and the legal principle established by the Womble case, supra, remarking that the proof showed that Womble had "simply lost the use of his arm for the present * * *, and except as to the disabled arm, there was no injury entitling him to compensation." [254 Ky. 671, 72 S. W. (2d) 55.] There was apparently no place for a decision of the question before us in either of the cases. There was a serious injury to Patrick's leg resulting in ulcerations and sores which did not respond to treatment. The medical testimony is not recited in the opinion. However, this court found from perusal of the proof "the result of plaintiff's leg injury * * * is, as found by the board, that he is handicapped, both by the loss of the use of his leg and also by reason of his general disabled condition resulting from the pain and suffering caused him thereby, as, under the evidence, entirely disables him from the performance of the work of his occupation * * *. In such a situation the question becomes not whether he is in worse plight through having an injured leg which so disables him from work than he would be had he lost his leg, but

whether or not his *general condition,* resulting by reason of his injury, is one coming within * * * section 4897 of the Statutes.''

The question presented in the Womble case was whether or not under the facts before the Board it should apply the specific schedule or what is called the general statute. There was no sharp question as to the power of the Board to apply the specific schedule; the real question going toward establishing the ''principle'' in each of the discussed cases was precisely the same, though much closer on presentation of the facts in the Patrick case. A casual reading of the Womble case shows that while Womble's most serious injury was to the left hand and forearm, the proof before the Board was that in addition to that injury there resulted infection and sores which did not respond to three years' treatment, and 40 per cent limitation in the left shoulder movement. We upheld the Board's award under the ''general'' statute, concluding that the Board was justified in making it because sufficient evidence was shown ''that the appellee has lost more than the left arm. He has sustained also an injury to the shoulder and this is permanent, for the tissue is destroyed. The injury to the shoulder is an injury to the body or trunk of a man, and is outside of an injury to an arm. The facts proved show that appellee is in a much worse condition than he would be if he had simply lost his arm. Other parts of the body besides the shoulder are injured. * * * his injury affects his general health and strength.'' [251 Ky. 150, 64 S. W. (2d) 481.]

We are thoroughly cognizant of the many cases in which, from the enactment of the law to the present time, we have held that it must be construed liberally in favor of the employee, its purpose being to afford protection to an injured employee, and in case of death to his dependents. These are so well known as not to require citation. But the law should always be construed and applied, and evidence weighed so as to do justice both to employer and employee. Elkhorn Coal Co. v. Stout, 293 Ky. 61, 168 S. W. (2d) 332. The rule of liberal construction does not mean disregard for the statute or its repeal under the guise of construction. Buckles v. Kroger G. & B. Co., 280 Ky. 644, 134 S. W. (2d) 221.

We have here a mixed question of law and fact—

whether or not the proof was such as to bring the claim of Delph under the general or specific statutes. We are clearly of the opinion that the proof adduced did not authorize the Board to apply the general total permanent disability statute, and disregarding for the moment the question of the correctness of the Board's ruling in annulling the agreement under the presented facts, we are of the opinion that it was not justified in making the award which the circuit court upheld.

Judgment reversed with directions to the court to remand the case with direction to the Board to set aside its award.