V. E. BARNES, Commissioner of The Department of Economic Security Division of Public Assistance, Appellant,

v.

Ancil NEAL, Appellee.

V. E. BARNES, etc., Appellant,

v.

Otis CLARK, Appellee.

V. E. BARNES, etc., Appellant,

v.

Hulen CLARK, Appellee.

Court of Appeals of Kentucky.

Feb. 17, 1956.

Paul E. Tierney, Samuel H. Cole, Christopher C. Frishe, Frankfort, for appellant.

Leonard S. Stephens, Whitley City, for Ancil Neal.

Homer W. Ramsey, George Hatfield, Jr., Whitley City, for Otis & Hulen Clark.

SIMS, Judge.

These three motions for appeal involve the same question, were briefed together and all will be disposed of in this opinion.

The Commissioner of Economic Security of Kentucky has moved for an appeal in each case from a judgment of the McCreary Circuit Court which directed the reinstatement of grants of state aid to the dependent and needy children under 18 years of age of each appellee, Ancil Neal, Otis Clark and Hulen Clark.

The Department of Economic Security had discontinued previous grants of aid on the ground that the dependent children of each appellee did not meet the statutory requirements making them eligible for public assistance. Each case was reviewed by the Appeal Board under KRS 205.230(1, 2), which affirmed the ruling of the Department, whereupon all three parents appealed to the McCreary Circuit Court under KRS 205.230(3, 4).

We have jurisdiction to hear these motions for appeal for the reasons set out in Barnes v. Turner, Ky., 280 S.W.2d 185. The chief question in issue is whether the dependent children of the three appellees met the definition of "needy" children set out in KRS 205.010(5), which reads:

> " 'Needy child' means a child under the age of eighteen who has been deprived of parental support by reason of the death, absence or incapacity of a parent, and who is unable to provide for himself and who does not otherwise have provided for him a subsistence compatible with decency and health".

To determine this question it is necessary that we examine the evidence in each case.

Ancil Neal, at the time of the hearing by the Department, was 38 years of age, was suffering from "ankylosis, left knee, practically no motion; cause not evident; but tuberculosis history, with atrophy all muscles left leg and thigh." Neal wears a brace on his left leg. He left a job with Reveridge Paper Company in Indianapolis on July 21, 1953, on account of the illness of his child and returned to Kentucky. He testified:

> "Well, I could work if I had a real light job where I could sit down, but there ain't no work around here, and I ain't got no way to get off to get it, and my leg bothers me so bad I can't use it. Maybe I'd get a job standing and maybe there'd be two or three days I can't be on it."

Dr. Frank Duncan had this to say as to Neal's condition: "This man's disability is entirely limited to his leg. He is unable to do any work which requires much walking, but should be able to do any type of factory work which permits him to sit."

Dr. J. N. Ross, after giving Neal's symptoms stated, "I am not of the opinion that this man is able to perform manual labor or secure employment."

Dr. Grover C. Meece stated as to Neal's inability to work: "In my opinion this man is unable to secure employment in industrial work as a laborer." Dr. W. L. Pyle, testifying on the same subject said, "Be therefore known to all people this man can never labor to support himself and family. Given under a careful examination."

Otis Clark, at the time of the hearing conducted by the Department, was in his middle 50's. He had been a coal miner and in 1949 suffered a disability and received a pension from the United Mineworkers of America. Dr. R. C. Kimbrough, who examined him for the mine pension testified: "It is felt that this patient is totally and permanently incapacitated for any further mining because of the bronchitis and emphysema and the nervous reaction with regard to his heart and his age of fifty-three years. * * * It is possible that he could do sedentary type of jobs where he did not have to exert himself by walking or carrying any heavy loads."

As to Otis Clark's condition, Dr. Frank Duncan testified: "This man is certainly unable to follow strenuous employment but it is felt that there is a good likelihood that he could follow light work if it were available and if he so desired."

Hulen Clark, at the time of the hearing conducted by the Department in his case, was 53 years of age. He had suffered a back injury in a mine accident in 1946. Drs. Carl E. Ausmus and Charles A. Prater testified relative to his condition on November 2, 1953: "We consider the above (Hulen Clark) to be totally disabled for work, due to the following: Neuritis of ruptured invertebral disc, rheumatism, chronic prostatitis and chronic myocarditis. He certainly cannot do manual labor." Dr. Pat-

terson, who examined this man for the Department, gave practically the same diagnosis of the patient's physical condition and concluded he was limited in all types of physical activity but "OK for activity requiring only slight exertion."

■ The Department's regulation interpreted "incapacity" as meaning inability to engage in any type of employment without regard to previous training or past experience. This interpretation in effect requires a total incapacity of a parent to be gainfully employed before the statute places the burden on the State to support the children. Such interpretation was upheld by this court in Barnes v. Turner, Ky., 280 S.W.2d 185, 187. We there wrote the statute was designed "to meet a particular kind of need for public assistance" and stated, "the test is employability, not the availability of employment." Thus, if a miner is no longer physically able to follow that strenuous employment but is capable of performing some lighter work, he is obligated to take the lighter work and support his children.

This is reasonable both from an economic and social view. Many men physically handicapped from pursuing one line of endeavor have entered another field and succeeded. It is not unusual to see a badly crippled person outstripping economically one who is sound and possesses all of his physical faculties. However, in order that there may be no misunderstanding of the term "availability of employment" as used in the Barnes opinion, we now state that if one is so handicapped physically that he cannot obtain reasonably accessible employment in the community or county in which he usually resides, or self-employment, then needy children of such parent qualify under the statute for state aid.

It is argued by appellees that "incapacity" as used in KRS 205.010(5) does not mean total disability to perform any labor, but that children are entitled to the benefit of the statute if their parent is incapacitated from performing his usual work, or from following the trade in which he is experienced or has been trained. In other words,

if he cannot compete in the labor market with a "whole" man for employment, then his children come under the statute, citing Olson v. Triplett, 255 Ky. 724, 75 S.W.2d 366, and other like workmen's compensation cases.

We cannot agree with appellees that "incapacity" as used in the statute means that one need only be incapacitated to the extent that he is prevented from pursuing his usual work or from following the trade in which he is experienced or has been trained. It strikes us that the meaning the Legislature intended to give "incapacity" does not require one to be totally incapacitated from following *any* gainful work or occupation, nor does it mean that one is incapacitated if he cannot follow the *usual* work or trade in which he has experience or has been trained. We are of the opinion the Legislature meant that one is incapacitated when his physical condition prevents him from accepting employment which is reasonably accessible to him, or is prevented by his physical condition from being self-employed.

The theory of the Workmen's Compensation Act, KRS 342.001 et seq., is that where industry has injured a man so he cannot follow his usual trade and cannot compete with sound men in the labor market, then industry must compensate him. But KRS 205.010(5) is not a compensation statute. This statute was enacted to aid "needy" children under 18 whose parents are incapacitated from supporting them, rather than to compensate a workman for an injury arising out of and in the course of his employment.

■ We held in Barnes v. Turner, Ky., 280 S.W.2d 185, that under KRS 205.230 (3, 4), the circuit court must try this character of case on the record made before the Board and if there is any evidence of probative value to support the finding of the Board, the courts are bound thereby and may not disturb such finding. We conclude this to be the proper interpretation of the statute. The Board has trained personnel who make a full and complete investigation of all family conditions and the surrounding

422

circumstances. Manifestly, the Board is in a much better position than are the courts to determine whether the parents are incapacitated from supporting their children.

In view of the fact that we have here expanded the opinion in Barnes v. Turner, Ky., 280 S.W.2d 185, as to the meaning of "availability of employment", we now grant the motion for appeal in each case and the judgments are reversed with directions that the circuit court refer each case back to the Department for a hearing on the question of whether or not the three appellees can obtain in the community or county in which each usually resides accessible employment, or self-employment, in his present handicapped physical condition.

The judgments are reversed for proceedings consistent with this opinion.