## Stearns Coal & Lumber Co. v. Roberts (Two Cases).

Feb. 2, 1943.

76

H. C. Gillis for appellant.

J. L. Kilgarriff and Brent Overstreet, and Stephens & Steely for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

These two appeals involve the same parties, and will be disposed of in one opinion. The first is an appeal from a judgment of the McCreary circuit court rendered December 20, 1940, affirming an award of the Workmen's Compensation Board made May 21, 1940. A certified copy of the judgment was filed in this court and an appeal granted December 31, 1941. The second is an appeal from a judgment of the McCreary circuit court rendered October 23, 1941, enforcing the award of the board of May 21, 1940. An appeal from that judgment was granted by the circuit court, and the record was filed in this court December 15, 1941. It is appellant's

contention that the judgment of December 20, 1940, affirming the award of the Workmen's Compensation Board should be reversed because the award was not authorized by the evidence.

Jonathan Roberts, an employee of the Stearns Coal & Lumber Company, claimed that he received an injury arising out of and in the course of his employment on January 13, 1938. He was examined by the company's local physicians, and was sent to Louisville, Kentucky, by the company, at least three times, where he was examined by several physicians and surgeons. He was paid compensation by the company at the rate of $15 a week until July 31, 1938, when the payments were stopped upon receipt by the employer of a report from the physicians who had examined Roberts that, in their opinion, his disability, if any, did not result from traumatic injury. Roberts filed his application for compensation with the Workmen's Compensation Board, proof was heard, and on February 6, 1940, the referee found that he did receive an injury arising out of and in the course of his employment on January 13, 1938, and that by reason of the injury he was totally and permanently disabled. He also found that Roberts' average weekly earnings entitled him to compensation at the maximum rate allowed by law, and he awarded him compensation at the rate of $15 a week for 400 weeks, to be credited by the amounts theretofore paid to him. The employer applied for a review by the full board, and on May 21, 1940, the board approved the findings of the referee. The employer filed a petition for review in the McCreary circuit court, and on December 20, 1940, the award was affirmed.

Roberts was the only eyewitness of the accident in which he claims he was injured. He testified that he had worked for the Stearns Coal & Lumber Company about twenty years in various capacities, and at the time of the accident was employed as a coal loader. He had filled a car with coal and was pushing it up a grade when his feet slipped and the car rolled back on him. He was doubled up with his head between his knees and was pushed by the car in this position a distance of 10 or 15 feet before he could extricate himself. The loaded car weighed about 5,500 pounds. He was unconscious for several minutes. After regaining consciousness he walked into the airway, a distance of 15 or 20 feet, and after about an hour, assisted by his son who had been loading coal in a room

nearby, started walking toward the entrance of the mine. He walked to his home about one-half mile from the mine and went to bed. On the following day he went to Stearns and was examined by Dr. Blackerby, one of the company physicians. After a few days Dr. Blackerby sent him to Danville, Kentucky, to be examined by Dr. J. R. Cowan who had an X-ray picture taken of his spine. Later he was sent by the company to Louisville, a distance of about 160 miles, at least three times for examination. He testified that he was an able bodied man and worked regularly in the mine until the date of his injury, but since then had not been able to perform labor of any kind. He suffers pain in his back almost continuously, and his left leg and side are numb. His only relief is furnished by a brace which he wears and which was prepared for him by one of the company doctors.

The medical testimony, as usual, is not harmonious. Dr. R. M. Smith of Stearns examined appellee about three weeks after the date of the alleged injury, and found that he was wearing bandages which had been applied by Dr. Blackerby, one of the local company physicians. He found no objective symptoms indicating that appellee had been injured, and concluded that he might be suffering from arthritis which would account for the numbness of which he was complaining. Dr. Blackerby did not testify. Dr. J. R. Cowan of Danville examined the appellee on February 7, 1938, and had his spine X-rayed. He found no evidence of pressure on the spinal column, but prescribed a brace to relieve any pressure that might exist. He treated the appellee for a sacro-iliac sprain, and based the treatment on subjective symptoms alone. Dr. Barnett Owen, a surgeon of Louisville, Kentucky, examined appellee on March 31, 1938, twice in April and the fourth time on July 8, 1938. He made a complete X-ray examination of the spine and, being suspicious of possible pressure on the spinal cord because of the numbness in appellee's leg, he referred him to Dr. R. Glenn Spurling, a neurological surgeon. One method of determining whether or not there is pressure on the spinal cord is to inject an oil solution, lipiodol, into the spinal canal and to examine the canal through a fluroscope. This was done, and it was found that there was a shadow at one place which indicated a slight restriction in the flow of the solution but not sufficient to indicate pressure on the spinal cord. Dr. Owen stated that an injury which caused pressure on the spinal cord

might be more recognizable in December, 1938, than in July, the last time he examined appellee. Dr. W. E. Gardner of Louisville, a psychiatrist and neurologist, examined appellee on July 11, 1938, and failed to find any positive evidence that he had any pressure on the spinal cord. He found some inequality between the reflexes in the right and left leg. Dr. R. Glenn Spurling examined appellee in July, 1938, and found no evidence of a traumatic injury. Lipiodol investigations were made on two occasions, and it was found that there were arthritic changes involving the second, third, and fourth lumbar vertebrae. Dr. Spurling testified in part as follows:

"On the first examination, July 9th, we found that there was a dumb bell shape place at the fourth lumbar vertebra, and found smaller places between the second and third lumbar vertebrae. That examination was repeated on July 21st to see if there was any encroachment upon the spinal canal; because of these findings—clinical findings, and X-ray findings of the case, and in observing the patient in the hospital repeatedly, I felt that the patient should be treated conservatively, we had no indication that he had a lesion at all, and therefore sent him home."

Referring to an X-ray film which was introduced in evidence, he said:

"* * * there appears to be a deformity between the fourth and fifth lumbar vertebrae, the fourth interspace, as we call it, which in my experience is the typical defect that one sees with a permanent intervertebral disc, and one that I have seen in many areas of some patients which I have had under treatment."

Later in his testimony he said:

"He has a definite wedge shape deformity of his first lumbar vertebra, and at first thought, and first examination, I though it might have been due to an old fracture, was my opinion about the thing, and I must acknowledge it is largely strengthened by Dr. Bell's opinion about it, so that this probably represents a juvenile epiphysitis, and not a fracture, because there are certain things that are designated, that we usually see with fractures, that make me

feel probably it is not so. * * * We know it is not causing pressure on the nerve or spinal cord, because we visualize those things very fairly as the lipiodol covers not only the lower lumbar spine, but all of it.''

He concluded that appellee's disability was limited to his own subjective complaints, and that he was not suffering from a traumatic injury.

Appellee went to Louisville in December, 1938, and was examined by Drs. G. G. Altman, John D. Trawick, Charles W. Jefferson, and W. C. Martin. Dr. Altman sent him to Dr. Martin for X-ray pictures. A lipiodol investigation disclosed a restriction of the flow in the canal near the fourth and fifth lumbar vertebrae. Dr. Altman concluded that appellee was suffering from what is known as herniated nucleus pulposus, and that it was then dangerous to operate to correct it. He was asked these questions and made these answers:

''Q. Doctor, did the man complain of pain? A. Well, when he lifts, or moves, or when he hiccoughs, or any such movement, he complains of pain; however, what he complains of is just what he can understand, but the pathology of the condition that exists demonstrates beyond question that the man is injured.

''Q. Those things that he complains of, are they a natural consequence of nucleus pulposus? A. Yes, they are the natural consequences of herniated nucleus pulposus.

''Q. Is that a very dangerous injury, Doctor? A. I would say it was sufficient to cause him to be completely disabled, and unable to do any kind of work that requires him to use his back.''

After stating that in his opinion appellee's condition resulted from a traumatic injury, he said:

''Let me add further that it is equally my opinion that such condition would have been impossible to exist without a severe injury, and this man would have found it impossible to do the kind of work he was doing if this injury existed previous to that time.''

Dr. W. C. Martin made an X-ray examination of appellee December 2, 1938, and expressed the opinion that

he had a herniated nucleus pulposus. Dr. John D. Trawick and Dr. Charles W. Jefferson were present in Dr. Altman's office when appellee was examined, and they concurred with Drs. Altman and 'Martin in their diagnosis. Dr. Trawick was asked to explain how an intervertebral disc becomes restricted and what produced a herniated nucleus pulposus, and he said:

"The discs are cartilaginous places between the bodies of the spinal column, they are made up of such substance that they actually act as shock absorbers; it is quite apparent that if bone rested upon bone, the shock of stepping, or falling, or jumping upon the foot, or legs, would be transmitted immediately upward through the bony column to the base of the skull, and the patient' would be constantly in danger therefore kindly Providence has put between these bony bodies cartilages, comprising shock absorbers. There is within the center of each cartilaginous disc a nucleus, or center; it is possible for the disc to become compressed, and ruptured, and the edges of the disc would be squeezed out between the bodies of the upper and lower vertebrae, like the fluid in a sandwich would be squeezed out if the sandwich were bitten; that is the identical thing that occurs in the herniation of an intervertebral disc. In this man's case, it is my judgment that the herniation projected backward upon the spinal canal, and has produced definite pressure at that spot."

Appellee described the accident in which he received the injury, and testified that he had suffered pain in his back constantly since the accident and was unable to work though he had worked regularly in the mine prior to the accident. There was medical proof to the effect that he has a herniated nucleus pulposus produced by a traumatic injury, and that he is totally and permanently disabled. The medical testimony was in sharp conflict, but there was competent and relevant evidence of sufficient probative force to sustain the finding of fact by the board, and the circuit court properly declined to disturb its award. Kentucky-Jellico Coal Company v. Lee, 289 Ky. 821, 158 S. W. (2d) 385; Consolidation Coal Company v. Marcum's Adm'r, 289 Ky. 220, 158 S. W. (2d) 150; Black Mountain Corporation v. Myers, 289 Ky. 49, 157 S. W. (2d) 488.

It follows that the judgment of the McCreary circuit

court rendered December 20, 1940, must be affirmed.

The judgment of October 23, 1941, is assailed on several grounds. It is first insisted that the judgment is void because it was entered in vacation. A few days after the entry of the judgment affirming the award of the board, appellant mailed its check for $1,358.91 to appellee for the installments due him from July 31, 1938, when payments were stopped, to February 29, 1940. It declined to make any payments under the award subsequent to February 29, 1940, on the ground that appellee had refused on that date to go to Louisville at the expense of the company and be examined by Dr. R. Glenn Spurling for the purpose of ascertaining his physical condition at that time. Appellee returned the check to appellant because it did not cover the accrued compensation to date. Relying upon the provisions of KRS 342.205 (Carroll's Kentucky Statutes, section 4918), that if an employee refuses to submit himself to examination at reasonable time and places to a duly qualified physician or surgeon designated and paid by the employer, no compensation shall be payable for the period during which such refusal continues, appellant refused to tender payment of any compensation due under the award subsequent to February 29, 1940, and on September 29, 1941, when the McCreary circuit court was in vacation, appellee filed in the clerk's office a certified copy of the award of the Workmen's Compensation Board and a motion to enforce it. On October 11, 1941, an order signed by the circuit judge was entered on the order book filing the motion of appellee to enforce the award in his favor and a motion of his attorneys for a judgment in their favor for $650 for services rendered appellee, and a copy of the opinion and award of the referee of February 6, 1940, and the opinion of the full board on review dated May 21, 1940, and a copy of an order entered by the board on June 17, 1941, allowing appellee's attorneys the sum of $650 for their services. The written objections of the appellant to the motion of appellee was filed along with certain affidavits and exhibits. The motion was set for a hearing on October 23, 1941, and on that day judgment was entered enforcing the award of the Workmen's Compensation Board granting appellee compensation at the rate of $15 a week for 400 weeks and adjudging that he acted reasonably in refusing to go to Louisville to be examined by appellant's physician, and that he had not forfeited any compensation from February 29, 1940, to

the date of the judgment. The court declined to sustain in full the motion of appellee's counsel to enforce an award of the Compensation Board made on June 17, 1941, allowing counsel the sum of $650 for services rendered appellee, but it sustained the award of the attorneys to the extent of allowing them $310, the amount to which they were entitled out of the payments which had accrued.

KRS 23.150 (Carroll's Kentucky Statutes, section 964b-1) reads as follows:

"The judge of each circuit court, other than those of continuous session, may make or direct in vacation or term time at his chambers, at the circuit clerk's office or at any other place in any county in the district, any order, rule, judgment or decree in any proceeding, whether at law or in equity or on the criminal docket, upon reasonable notice to the parties, except where trial by jury is called for or ordered by the court."

It is argued that this section has no application to a special proceeding under the Workmen's Compensation Act for a judgment enforcing an award since the statute is limited to proceedings at law or in equity, but we think this is too narrow a construction and that it was the purpose of the Legislature in enacting the law to cover any action of which the circuit court has jurisdiction. KRS 342.305 (Carroll's Kentucky Statutes, section 4939), which provides that any party in interest may file in the circuit court a certified copy of an award of the Workmen's Compensation Board and that the court shall thereupon render judgment in accordance with such award, contemplates a speedy disposition of the matter in accordance with the spirit and intent of the Workmen's Compensation Law, and we have no hesitancy in holding that such a proceeding comes within the purview of KRS 23.150 (Carroll's Kentucky Statutes, section 964b-1).

Appellant next insists that the court erred in adjudging that appellee acted reasonably in refusing to go to Louisville to be examined by appellant's doctor, and that he had not forfeited any compensation by reason of such refusal. On February 26, 1940, appellant mailed a letter to appellee requesting him to go to Louisville for an examination by Dr. Spurling. The purpose of the trip to

Louisville, as stated in the letter, was "for a physical examination as to your present condition and for the purpose of ascertaining whether an operation should be performed to correct any disability which now exists." His application for compensation had been pending before the board for more than a year. A large amount of proof had been taken, and the referee had rendered an opinion February 6, 1940, stating that appellee had suffered injuries in an accident arising out of and in the course of his employment and that he was entitled to compensation at the rate of $15 a week for 400 weeks subject to be credited by the amount paid by the employer prior to July 31, 1938. On February 7, 1940, appellant made application for review by the full board, and the letter to appellee requesting him to go to Louisville for examination was written while that application was pending. The board was not notified that such a request had been made. While the statute provides that an employee, if so requested by his employer or the board, shall submit himself to examination at reasonable time and places to a duly qualified physician or surgeon designated and paid by the employer, and if he refuses to submit himself to or in any any way obstructs such examination his right to take or prosecute any proceeding under the act shall be suspended until such refusal or obstruction ceases, and no compensation shall be payable for the period during which such refusal or obstruction continues, yet, under the facts of this case, considering the time it was made, we think the matter of the request for an examination should have been submitted to the board and that, under the circumstances, appellee's refusal to submit to examination was not so unreasonable as to subject him to the penalties of the statute. He had been examined over a period of six months by nine or ten physicians and surgeons selected by appellant, and had made three trips to Louisville at its request. He had been thoroughly examined by Dr. Spurling, the surgeon designated in the company's letter of February 26, 1940, and Dr. Spurling had made a report and had testified in the case then pending before the board. Appellant merely mailed to appellee a letter requesting him to go to Louisville for examination, and then let the matter rest until the board made its award and the award had been affirmed by the circuit court when it sought to avoid payment of compensation installments falling due subsequent to February 29, 1940.

Appellant complains because the circuit court allowed $310 to the attorneys, but this question is academic so far as the company is concerned since the court only allowed to the attorneys fees to which they were entitled out of compensation payments then due. In appellee's brief it is argued that the court erred in reducing the allowance of $650 to the attorneys, and it is requested that the judgment be corrected in that respect. In response to that request, it is sufficient to say that the attorneys are not parties to this appeal and no cross-appeal has been prayed.

Appellant finally insists that the judgment of October 23, 1941, should be reversed on the ground of newly discovered evidence. After the judgment was rendered appellee notified appellant that he would go to Louisville and be examined by Dr. Spurling at any time it might request if his necessary expenses were paid in advance. He went to Louisville and was examined by Dr. R. Glenn Spurling and Dr. Everett G. Grantham on November 26, 1941. They reported their findings which, in substance, were that appellee was not suffering from herniated nucleus pulposus or any other active spinal disease, and that they were convinced he would be able to go to work as soon as his compensation claim was settled. On December 6, 1941, appellant filed a motion to set aside the judgment of October 23, 1941, and grant it a new trial. One of the grounds relied upon was newly discovered evidence resulting from the physical examination of appellee by Drs. Spurling and Grantham. The motion was overruled, and properly so. The circuit court was without jurisdiction to consider evidence not heard by the board. On motion for judgment on an award of the Workmen's Compensation Board, the award is binding on the court which is without power to review, modify, or change it in such a proceeding. Harlan-Wallins Coal Corporation v. Hensley, 237 Ky. 310, 35 S. W. (2d) 333; Holt Bros. Mining Company v. Fisher, 255 Ky. 418, 74 S. W. (2d) 469. Appellant's proper procedure was to apply to the Workmen's Compensation Board for a reopening of the case. KRS 342.125 (Carroll's Kentucky Statutes, section 4902).

The judgment in each case is affirmed.